# C. E. MERRITT v. ADAMS COUNTY LAND & INVESTMENT COMPANY, a Corporation.

### (151 N. W. 11.)

**Specific performance — contract to convey land — action for — innocent purchaser — supplemental complaint — jury to assess damages for breach — subsidiary to main action — still equitable action — verdict advisory merely.**

1. Where an action is brought in equity to compel the specific performance of a contract to convey land, and it transpires upon the trial that the land has been subsequently sold by the vendor to an innocent purchaser, and a specific performance of the contract is therefore impossible, and a supplemental complaint is filed and a jury is summoned to assess damages for the breach of contract, and such jury trial is subsidiary to the main action, the suit still retains its equitable nature, and the verdict of the jury is advisory merely.

---

Note.—The decision in this case, that a contract for the sale of land is not required by the statute of frauds to be signed by both parties, is sustained by the great weight of authority, as shown by a review of the cases in notes in 28 L.R.A. (N.S.) 680, and 43 L.R.A.(N.S.) 410.

The holding, that the measure of damages on breach by a vendor of his contract to convey real estate is the difference between the price agreed to be paid and the value of the real estate at the time of the breach, is also in harmony with the general rule, although a number of cases have made an exception where the vendor

**Contract for conveyance of land — party to be charged — executed by — agent of vendee — authority of — not in writing — may be enforced.**

2. A contract for the conveyance of land is sufficient and enforceable if properly executed by the party sought to be charged, and the mere fact that the authority of the agent of the vendee, who signed such contract, was not given in writing, does not deter such party from suing upon the contract.

**Contract of sale of land — signed only by seller — accepted by buyer — mutual.**

3. A contract of sale, if accepted by the buyer, is not wanting in mutuality because it is signed only by the seller.

**Corporation — vice president — acting for corporation — corporation affairs — authorized by by-laws to sell lands — third party has right to rely on such authority.**

4. Where a corporation chooses to incorporate under the laws of North Dakota, a third party has the right to believe that the vice president of the company, when acting in the town, and, if not in the principal place of business, in the office of the attorney of the company, and in relation to a sale of the land of the company, for the purpose of buying and selling which the company alone was incorporated, is authorized by the by-laws to make such contract of sale, and when such officer tells such third party, upon express inquiry, that he has such authority, and the third party relies upon such statement, and not only pays down an earnest price, but obligates himself on a contract with still another party on the reliance therewith, and of which fact he informs the vice president, such purchaser has the right to believe in the statement of the vice president, and to pay the money on the strength of such belief, and when the vice president receives the money, he receives it for and on behalf of the company he represents, and such ostensible authority is not weakened by the fact that the attorney who draws the papers suggests to the plaintiff that it would be well to send them to another state where the other officers of the company reside for approval, it being shown by the evidence that, on and after such statement, the said vice president positively assured the plaintiff of his authority and of the validity of the agreement. In such a case also the knowledge of the vice president of the receipt of and payment of the earnest price will be pre-

acted in good faith and the breach was not intentional or wilful. An exhaustive review of the authorities on this question is found in a note in 16 L.R.A. (N.S.) 768.

The question as to the right of a vendee to recover for profits lost through breach of contract by his vendor seems to depend, according to the authorities reviewed in a note in 52 L.R.A. 240, upon whether or not, in refusing to convey, the vendor acted in good faith.

The general question of the authority of the president or vice president of a corporation to execute contracts for the transfer of property is considered in a note in 14 L.R.A. 358.

sumed to be the knowledge of the company, and its retention will amount to a ratification of the contract.

**Contract of sale of land — breach of — damages for — must be clearly ascertainable.**

5. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.

**Damages — awarding — two methods — the one most certain to be followed.**

6. Where two methods of awarding damages are possible, the one being certain and the other being uncertain, that which is certain will be adopted by the courts.

**Action for damages — failure to convey land — measure of damages.**

7. Where an action is brought for damages for the failure to convey land, the general rule as to the measure of damages, and the measure which is prescribed by § 7151, Compiled Laws of 1913, is "the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, and the expenses properly incurred in examining the title, with interest thereon, and in preparing to enter upon the land, and the amount paid on the purchase price, if any, with interest thereon from the time of the breach."

**Damages for loss of profits — subsequent sale — value of lands being exchanged — not known — cannot be recovered.**

8. Damages for the loss of profits under a subsequent contract of sale which is entered into in reliance upon a former one which is sued upon, and where the fact of such sale is known to the seller, cannot be recovered when such subsequent sale involves the trading in of lands, the value of such lands being traded for not being known to the original vendor at the time he made his contract. Whether such damages could be recovered if the value had been known is not here passed upon.

**Contract for sale of land — breach of — action for — allegations of complaint — general damages — sufficient.**

9. A complaint alleging a contract for the sale of real estate, a breach of the contract, and that the plaintiff has sustained damages to a specified amount thereby, is sufficient to justify the assessment of general damages under § 7151, Compiled Laws of 1913, although special damages which are not provided or recoverable are also alleged therein.

### On Petition for Rehearing.

10. In an equity case where the district court calls in a jury for advisory purposes, the trial is not governed by the provisions of § 7846, Compiled Laws of 1913, nor does the supreme court try such cases anew upon appeal. That statute applies only to such cases as are tried in the district court without a jury.

11. Where a court in an equity case calls in a jury for advisory purposes, such court is vested with discretion to vacate such verdict in full or in part, but this does not alter the fact that such verdicts are entitled to receive grave consideration at the hands of trial courts. Where, however, even though improper evidence is admitted, the verdict of the jury is clearly in accordance with the evidence properly admitted, and in accordance with the equities of the case, a new trial will not be granted by the supreme court after the affirmance of such verdict by the trial judge, merely because such improper evidence has been admitted.

Opinion filed January 21, 1915. Rehearing denied February 10, 1915.

Action for specific performance of a contract to convey land, with subsequent supplemental complaint for damages. Appeal from the District Court of Adams County, *Crawford,* J. Judgment for plaintiff. Defendant appeals.

Affirmed.

Statement of facts by BRUCE, J.

This action was commenced on the 27th day of April, 1911, to compel the defendant to specifically perform a contract for the conveyance of land in Adams county, North Dakota. The defendant was a corporation organized under the laws of North Dakota for the purpose of buying and selling land. It had its principal office at Hettinger, Adams county, North Dakota. Nothing in the record shows that any particular building or place was set apart for that purpose, but the company had a representative at Hettinger, who lived on a nearby farm of the defendant company, and who was vice president of the company. This person, A. A. Jackson by name, also styled himself general manager, and was known by such appellation, at any rate by the bank with which his company dealt. The company seems to have had no other representative in North Dakota, its other officers and stockholders living in Indianapolis, Indiana. The plaintiff, seeking to buy land from the company, carried on, through his agent Bigham, negotiations with the said Jackson at Hettinger, and made a contract with him for the purchase of a section of land belonging to the company, and which contract was signed: "Adams County Land & Investment Company, by A. A. Jackson, V. P. Vice President and General Manager. C. E. Merritt, by Chas. Bigham, his agent." At the time of the making of such contract, and

as a part thereof, the plaintiff's agent delivered to the said A. A. Jackson a check for $500, which was made payable to the Adams County Land & Investment Company. This check was afterwards indorsed by the said Jackson: "Adams County Land & Investment County, by A. A. Jackson, V. P. and Gen. Mngr.," and was deposited by him in a local bank to his own account, and the proceeds thereof were afterwards checked out by him. The record shows that the Adams County Land & Investment Company had no open account at the time with the bank, but from time to time sent money to Jackson which he deposited in his own name and paid small bills of the company therefrom, together with those of his own.

It transpired upon the trial that before the alleged contract was entered into the defendant had sold the land to another party, and was therefore unable to carry out its part of the agreement with the plaintiff. After hearing all the evidence in the case, except on the question of damages, the court made findings of fact and conclusions of law in favor of the plaintiff, but ordered that the action should be retained in equity for further proceedings to allow such plaintiff to establish his claim for damages. This so-called interlocutory judgment was filed on the 20th day of September, 1912. Later the plaintiff filed a supplemental complaint, and the case was tried on the question of damages before the court and a jury, at the January, 1912, term of the court, and a verdict was rendered in favor of the plaintiff for the sum of $1,850. The trial court then entered judgment on this verdict and the defendant has appealed.

*P. D. Norton, John Carmody, Karl L. Hjort,* for appellant.

The measure of damages, if any, is the difference between what plaintiff paid or agreed to pay for the land, and the market value, if such value was more than the price plaintiff was to pay, and not what some third party may have agreed to pay. Rev. Codes 1905, § 6563; Beck v. Staats, 16 L.R.A.(N.S.) 768, and cases cited in notes found on pages 768, 772.

The damages in such cases must be clearly ascertainable, not speculative. Hudson v. Archer, 9 S. D. 240, 68 N. W. 541.

*E. C. Wilson* and *Amos N. Goodman,* for respondent.

The trial court at no time treated this suit as two separate actions,— one for specific performance and one for damages for breach of contract.

The question of damages was not thought of until plaintiff offered proof that he had resold the land. Then all parties agreed to call in a jury for the sole purpose of fixing the amount of the damages. The verdict was merely advisory thereon; the action still retained its equity form in the hands of the court. This procedure is a well-recognized rule in such cases, and for the limited purpose stated, and was here adopted · without objection. Van Dusen v. Bigelow, 13 N. D. 277, 67 L.R.A. 288, 100 N. W. 723; Mitchell v. Knudtson Land Co. 19 N. D. 738, 124 N. W. 946; 1 Pom. Eq. Jur. § 237, p. 342; Rev. Codes 1905, § 6663.

Evidence of facts which admit the act charged, but which avoid its force or effect, is inadmissible. Bliss, Code Pl. 240, 327, 341, 352; Piercy v. Sabin, 10 Cal. 22, 70 Am. Dec. 692, as quoted under § 329 of Bliss, Code Pl.

Even if our contract were not signed by the company, still it is liable, for respondent performed it. The recitals of a contract as to payments received are conclusive. McPherson v. Fargo, 10 S. D. 611, 66 Am. St. Rep. 723, 74 N. W. 1057.

A party who has signed a written contract may be compelled to perform it, though the other party has not signed it, if the latter has performed or offered to perform it on his part, and the case is a proper one for specific performance. Gira v. Harris, 14 S. D. 537, 86 N. W. 624; McPherson v. Fargo, 10 S. D. 611, 66 Am. St. Rep. 723, 74 N. W. 1057; Rev. Codes 1905, § 6660.

If the company in fact has the by-law which it claims to have, it can recover full compensation from Jackson for any damages it is compelled to pay plaintiff. The plaintiff cannot recover from Jackson, for he had no dealings with him. Imhoff v. House, 36 Neb. 28, 53 N. W. 1032; Coles v. Iowa State Mut. Ins. Co. 18 Iowa, 425; Palmyra v. Morton, 25 Mo. 593; Buffalo v. Webster, 10 Wend. 99.

A third party had agreed to buy the land for a fixed price. His testimony on this point was competent on the question of general damages to plaintiff. Northwestern Fuel Co. v. Mahler, 36 Minn. 166, 30 N. W. 756.

"He who takes the benefit must bear the burden." Rev. Codes 1905, § 6668.

The company should have affirmed or disaffirmed the whole con-

tract; there was no middle road for it. It cannot disaffirm as to the part that is onerous, and affirm and retain so much of it as is beneficial. It cannot keep the advantage gained, and repudiate the burden. It cannot keep the consideration in whole or in part, and disaffirm. Rev. Codes 1905, § 5310; Foulke v. San Diego & G. S. P. R. Co. 51 Cal. 365; Merchants' Union Barb Wire Co. v. Rice, 70 Iowa, 14, 29 N. W. 784; Alexander v. Culbertson, Irrig. & Water Power Co. 61 Neb. 333, 85 N. W. 283; Moody & M. Co. v. Methodist Episcopal Church, 99 Wis. 49, 74 N. W. 572; Kneeland v. Gilman, 24 Wis. 39; Gano v. Chicago & N. W. R. Co. 60 Wis. 12, 17 N. W. 15; Kickland v. Menasha Wooden Ware Co. 68 Wis. 34, 60 Am. Rep. 831, 31 N. W. 471; Dedrick v. Ormsby Land & Mortg. Co. 12 S. D. 59, 80 N. W. 153; Hunt v. Northwestern Mortg. Trust Co. 16 S. D. 241, 92 N. W. 23; Moore v. Atlantic Mut. Ins. Co. 56 Mo. 343.

The contract was executed by the vice president, and is binding on the corporation. Smith v. Smith, 62 Ill. 493; Ellison v. Branstrator, 153 Ind. 146, 54 N. E. 433; Neosho Valley Invest. Co. v. Hannum, 10 Kan. App. 499, 63 Pac. 92; Home Sav. & State Bank v. Wheeler, 74 Ill. App. 261; Leroy & C. Valley Air Line R. Co. v. Sidell, 13 C. C. A. 308, 26 U. S. App. 656, 66 Fed. 27; Minor v. Mechanics' Bank, 1 Pet. 46, 7 L. ed. 47; American Exch. Nat. Bank v. Ward, 55 L.R.A. 356, 49 C. C. A. 611, 111 Fed. 782; Wait v. Nashua Armory Asso. 66 N. H. 581, 14 L.R.A. 360, 49 Am. St. Rep. 630, 23 Atl. 77.

His signing as general manager alone also binds the corporation. Western Homestead & Irrig. Co. v. First Nat. Bank, 9 N. M. 1, 47 Pac. 721; Hurst v. American Asso. 105 Ky. 793, 49 S. W. 800; Auburn Bank v. Putnam, 1 Abb. App. Dec. 80; Jones v. Williams, 139 Mo. 1, 37 L.R.A. 688, 61 Am. St. Rep. 436, 39 S. W. 486, 40 S. W. 353; Sparks v. Despatch Transfer Co. 104 Mo. 531, 12 L.R.A. 714, 24 Am. St. Rep. 351, 15 S. W. 417; Conely v. Collins, 119 Mich. 519, 44 L.R.A. 844, 78 N. W. 555; Goodwin v. Union Screw Co. 34 N. H. 378; Hamm v. Drew, 83 Tex. 77, 18 S. W. 434.

The by-laws of the corporation limiting the powers of its officers are only private rules, and have no effect on strangers. California Ins. Co. v. Gracey, 15 Colo. 70, 22 Am. St. Rep. 376, 24 Pac. 577; Hallenbeck v. Powers & W. Casket Co. 117 Mich. 680, 76 N. W. 119;

Flint v. Pierce, 99 Mass. 68, 96 Am. Dec. 691; Mechanics' & F. Bank v. Smith, 19 Johns, 115; Samuel v. Holladay, Woolw. 400, Fed. Cas. No. 12,288.

Even if the vice president had no power to bind the corporation, still it is estopped to deny that he had, because of its acceptance of benefits. Seeley v. San Jose Independent Mill & Lumber Co. 59 Cal. 22; Grice v. Woodworth, 10 Idaho, 459, 69 L.R.A. 584, 109 Am. St. Rep. 214, 80 Pac. 912; Gilbert v. American Surety Co. 61 L.R.A. 253, 57 C. C. A. 619, 121 Fed. 499; Reed v. Morton, 24 Neb. 760, 1 L.R.A. 736, 8 Am. St. Rep. 247, 40 N. W. 282; Barrell v. Lake View Land Co. 122 Cal. 129, 54 Pac. 594; Heinze v. South Green Bay Land & Dock Co. 109 Wis. 99, 85 N. W. 145; Bank of United States v. Danderidge, 12 Wheat. 64, 6 L. ed. 552; Zabriskie v. Cleveland, C. & C. R. Co. 23 How. 381, 16 L. ed. 488; Fayles v. National Ins. Co. 49 Mo. 380; Credit Co. v. Howe Mach. Co. 54 Conn. 357, 1 Am. St. Rep. 123, 8 Atl. 472; Farmers' & M. Bank v. Butchers' & D. Bank, 16 N. Y. 125, 69 Am. Dec. 678; Rev. Codes 1905, §§ 6664, 6690.

BRUCE, J. (after stating the facts as above). Although the trial before the jury was held some time after the hearing before the court, and the proceedings were treated in many respects as two independent actions, there can be no question that the hearing before the jury was held under the order of the court in the preliminary equity case, and that the verdict of the jury was nothing more or less than an advisory verdict of a jury which is rendered in a suit in equity.

The first point raised by appellant is that the contract of sale which is the foundation of the cause of action does not conform to the requirements of the statute of frauds, being § 5407, Rev. Codes 1905, § 5963, Compiled Laws of 1913, in that it is signed, as far as the plaintiff is concerned: "C. E. Merritt, by Chas. Bigham, his agent," and that there is no proof of any authority in writing to the said Bigham, and that such is required by § 5407, Rev. Codes 1905, § 5963, Compiled Laws of 1913, which provides that *"no agreement for the sale of real property,* or of an interest therein, is valid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party *to be charged,* or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific

performance of any agreement for the sale of real property in case of part performance thereof."

It is to be noticed that the statute merely speaks of an agreement *to sell,* and the agreement to sell which is sought to be enforced in this case was all that seems to have been required by the statute to have been authorized in writing. It is well settled, indeed, that not only is a contract sufficient and enforceable if executed by the party sought to be charged (see Morin v. Martz, 13 Minn. 191–193, Gil. 180, 182), but it has also been held that a contract of sale, if accepted by the buyer, is not wanting in mutuality because it is signed only by the seller. Ward v. Spelts, 39 Neb. 809, 58 N. W. 426; Justice v. Lang, 42 N. Y. 493, 1 Am. Rep. 576, reversing 2 Robt. 333, 30 How. Pr. 425; Tilt v. La Salle Silk Mfg. Co. 5 Daly, 19; 9 Cyc. 300.

The only question to be determined, then, is whether the contract was signed by the company itself, or was partly performed so as to be taken out of the statute of frauds and to render an action for damages or for specific performance maintainable. On this point there is no question that the plaintiff's agent gave to the vice president of the company a check for $500 at the time of the making of the contract; that that check was made payable to the Adams County Land & Investment Company, and that later it was indorsed "Adams County Land & Investment Company, by A. A. Jackson, V. P. and Gen. Mngr." and that, though the defendant company claims that it never received the proceeds thereof, it was paid to its representative and vice president. There is no claim that the money has ever been returned or offered to be returned, the extent of the offer being that the company would get A. A. Jackson to return the money. It, on the other hand, seems to be clear that A. A. Jackson was given no specific authority, either by the charter or by-laws, to sell land, and that the usual practice seems to have been (which practice, however, does not seem to have been generally known in North Dakota nor by the plaintiff) for land to be sold on a resolution of the board of directors.

The only question, therefore, to be determined, is whether A. A. Jackson had such ostensible authority that the plaintiff was justified in dealing with him and in purchasing land from him and making the payment to him in question. It really resolves itself around the question as to whether he had the ostensible authority to receive the money,

even though not to execute any specific contract of sale, as no effort seems to have been made to return the money. The case at bar seems in many respects to be analogous with that of Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, 150 N. W. 736, and we are quite satisfied, both under the holding in that case and of the authorities generally, that the plaintiff should be allowed to recover in the case at bar. Section 5770, Rev. Codes 1905, § 6324, Compiled Laws of 1913, defines ostensible authority to be "such as the principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." There is no question that if the by-laws or charter had so provided, the witness A. A. Jackson would have been the proper party to have made the contract, and to have received the money. Whether general manager or not, according to the understanding of the directors of the defendant corporation, he styled himself as general manager in North Dakota, and was known by the bank with which he dealt and with which the company dealt, as general manager. He was the only officer or agent of the company in North Dakota, and he was certainly vice president of the company. There is much conflict in the authorities, it is true, as to the duties of a vice president. Generally speaking, such an officer acts in the absence of the president. The president, in the general acceptation, is the general executive officer. It is no abuse of power or of a sound public policy to hold that when a corporation chooses to incorporate under the laws of North Dakota in order that it may deal in lands in North Dakota, and obtain the protection of the courts and of the laws of the state, both as to its contracts and to its property, and where the laws of North Dakota, loose and liberal though they may be, require that the principal place of business of the corporation shall be located in the state, that a third party has the right to believe that the vice president of the company when acting in the town, if not in the building, of the principal office, and in the office of the attorney of the company, and in relation to a sale of the land of the company, for the purpose of buying and selling which the company alone was incorporated, is authorized by the by-laws to make such contract of sale, and that when such officer tells such third party upon express inquiry that he has such authority, and the third party relies upon such statement and not only pays $500, but obligates himself on a contract with still another party on the reliance

therewith, and of which fact he informs the vice president, such purchaser has the right to believe in the statement of the vice president, and to pay the money on the strength of such belief, and, when the vice president receives the money he receives it for and on behalf of the company he represents. Nor do we think that this ostensible authority is weakened by the fact that the attorney who drew the papers suggested to the plaintiff's agent that it would be well to send them to Indianapolis for approval, it being shown by the evidence that on and after such statement, Jackson, the vice president, positively assured the plaintiff of his authority and of the validity of the agreement. Grant County State Bank v. Northwestern Land Co. supra.

It is unnecessary for us to examine the numerous objections to the admission of testimony in this case, including the testimony as to the subagreement by the plaintiff to sell the land in question to Gottlob Hoffman, and the loss of profits which he suffered on account of the failure of the defendant to convey the land to him and thus to make a reconveyance by him possible. A nice question of law is presented by these objections, both as to whether the damages provided for by § 6568, Rev. Codes 1905, § 7151, Compiled Laws of 1913, are exclusive of all others or whether the damages provided for the breach of a contract in § 6563, Rev. Codes 1905, § 7146, Compiled Laws of 1913, may in special instances and in the case of special damages which have or should have been foreseen at the time of the making of the contract of sale, also be relied upon (see Needham v. Halverson, 22 N. D. 594, 135 N. W. 203); also whether, such being the case, the rule of damages which is announced in the leading case of Hadley v. Baxendale, 9 Exch. 341, 2 C. L. R. 517, 23 L. J. Exch. N. S. 179, 18 Jur. 358, 2 Week. Rep. 302, 5 Eng. Rul. Cas. 502; which has been generally followed by the American courts, and which is emphasized in North Dakota by § 6563, Rev. Codes 1905, § 7146, Compiled Laws of 1913 (see Needham v. Halverson, supra), would apply in a case such as that before us (see Guetzkow Bros. Co. v. A. H. Andrews & Co. 92 Wis. 214, 53 Am. St. Rep. 909, 66 N. W. 119, 52 L.R.A. 209, and valuable note thereto in 52 L.R.A.

The question is not briefed or discussed with any thoroughness, and we believe it would be unwise to pass upon it in its entirety here. It is sufficient, however, to say that in the case at bar this measure of

damages can have no footing, and the later part of § 6563, Rev. Codes 1905, § 7146, Compiled Laws of 1913, is conclusive. This paragraph provides that "no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." It merely restates the common law. It must be taken and construed in connection with the general rule that the law abhors uncertainty and speculation, and that where there are two methods of proving damages, one of which is certain and the other of which is uncertain, the former will be adopted. In the case at bar it is shown that, though a contract for resale had been made by the plaintiff Merritt with one Gottlob Hoffman before the making of the agreement with the Adams County Land & Investment Company, and that the making of this agreement was known to the vice president of the Adams County Land & Investment Company at the time of the making of the later contract, and that said vice president knew that the land was sought to be purchased for the purpose of meeting the terms of this agreement, that this sub-agreement embodied a trade of lands, and that the real value of those lands is neither clearly proved in the case at bar, nor was their value known to the said vice president. The proof, in short, of the damages which were occasioned by the loss of the subsequent sale are not merely indefinite, but it also can hardly be said that the vice president in question had or should be presumed to have had sufficient knowledge of the attempted transaction, that is to say, of the trade of the lands as opposed to a mere sale for cash, as would, under the construction of § 6563, Rev. Codes 1905, § 7146 Compiled Laws of 1913, and of the case of Hadley v. Baxendale, supra, make it fair to presume that he anticipated or could have anticipated the value thereof.

The rule of damages, therefore, in the case at bar, must in any event be that which is laid down by § 6568, Rev. Codes 1905, § 7151, Compiled Laws of 1913, and which is: "The difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, and the expenses properly incurred in examining the title, with interest thereon, and in preparing to enter upon the land, and the amount paid on the purchase price, if any, with interest thereon from the time of the breach." This conclusion, however, does not necessitate a new trial or a reversal of the judgment, even though we concede that some of the evidence that was intro-

duced was inadmissible.  The action before us is a suit in equity and comes before us for a trial *de novo*.  The verdict of the jury was merely advisory, and the errors in the admission of evidence, if any, do not necessarily interfere with us here, and we are quite sure that they did not interfere either with the correct judgment of the jury or of the trial court.  The learned trial judge positively and correctly instructed the jury that their estimate of damages should be solely based upon the difference between the market value of the land contracted for by the plaintiff, and the price which he had agreed to pay therefor, added to which must be, if they found for the plaintiff, the original $500 payment, for which no consideration was received.  The judgment of the trial court, and the verdict of the jury on which it was based, were for the sum of $1,850, and this allowed, after deducting the $500 and interest thereon, some $1,300 for the difference between such contract and market price.  The price which was agreed to be paid for the land was about $16.25 per acre.  The testimony as to the actual value of the land runs all the way from $14 to $25 per acre.  The verdict of the jury allows a value of about $18.35 per acre. This is satisfactory to us, and we see no reason for overruling the judgment of either the trial court or the trial jury in relation to the matter.  Even though the allegation and proof of special damages may have been improper and insufficient, proof of the general damages allowed by § 7151, Compiled Laws of 1913, was permissible under the general allegation of damages which is to be found in the complaint, and not only was the jury instructed on this basis, but the trial was largely had upon this theory.  See 19 Enc. Pl. & Pr. 80; Partridge v. Blanchard, 23 Minn. 69.

We may close by adding that it is idle to say that the company did not know of the payment of the $500.  The knowledge of a vice president of a North Dakota corporation, who is the only officer in the state, and who is transacting the business of such company; which is the buying and selling of land, and which is acquired in such a transaction, is the knowledge of the company itself.  Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, 150 N. W. 736.

The judgment of the District Court is affirmed.

CHRISTIANSON, J., did not participate in the foregoing opinion.

## On Petition for Rehearing.

Bruce, J.  A petition for rehearing has been filed, which, among other matters, calls attention to the fact that the writer of the opinion erred in saying that "the case before this court is a suit in equity on a trial *de novo* under § 7846, Compiled Laws of 1913," and in assuming therefrom that the errors in the admission of evidence before the jury, if any, were immaterial.

Counsel is correct in his criticism that the writer of the opinion did err.  He, in fact, overlooked the prior opinion of this court in Peckham v. Van Bergen, 8 N. D. 595, 80 N. W. 759, in which we held that "in an equity case where the district court calls in a jury for advisory purposes, the trial is not governed by the provisions of § 5630, Rev. Codes 1895, as amended by chapter 5 of the Laws of 1897 (being § 7846 of the Compiled Laws of 1913); nor does this court try such cases anew.  That statute applies only to such cases as are tried in the district court without a jury."  We have therefore stricken the clause from the original opinion so that one reading that opinion and failing to read the words just written will not be confused thereby.  The fact, however, in no way changes the opinion or conclusion of this court in the case at bar.  The court in Peckham v. Van Bergen, supra, expressly stated that, though in such cases the verdict of the jury is entitled to receive grave consideration at the hands of the trial courts, and such juries are not called as a mere formality, their verdicts can be set aside if clearly wrong.  It would follow that, if their verdicts are clearly right, and, even though incompetent evidence may have been admitted, it is quite clear that the jury was not misled thereby, or at any rate that their advisory verdict is in accordance with the law, the mere fact of the introduction of such incompetent evidence will not justify the ordering of a new trial.  Such, we believe, is the case in the action before us.

Counsel also criticizes the statement of facts made by this court, and in which it said that the vice president told the plaintiff "upon express inquiry that he had the authority to make the contract," and calls our attention to the fact that at the moment the contract was executed all that the vice president did was, "with a waive of the hand, to say that it was all right as it was."  He, however, ignores the fact that the plain-

tiff positively testified that "at the time the contract was drawn I walked out with Mr. Jackson and had a conversation with him; I told him then after you (the attorney, Mr. Norton) spoke to me about there was some question in your mind as to this authority, you intimated something along that line. I talked with Mr. Jackson and I told him that we had drawn a contract for the sale of this land with a party, and we made a provision allowing ten days in case we couldn't deliver the land; that it was not binding upon us, and I told him at that time that I wanted to be sure and certain about his getting this land to us by the 1st of March. There was some encumbrance on the land, and I asked if he would see to having that paid up and having his abstract of title brought down to date, so that the deal could be closed on the date payment became due, and he assured me that everything would be all right; that he was vice president and general manager, and had authority to accept money and to make out contracts, and he had previously stated those things to me, and the fact that he had charge of the outfit out there,—I had been out to call on him a couple of times before the contract was made."

The petition for a rehearing is denied.