## Sterling P. Adams, Appellee, v. Orval A. Pendarvis, Appellant.

1. FRAUDS, STATUTE OF, § 72*—*what memorandum is sufficient to satisfy statute of frauds.* In an action to recover damages for the breach of an alleged contract for the sale of land, where plaintiff gave his check to defendant and defendant signed a memorandum thereon which recited: "Received the within check as part payment on my 80 acre farm in Sciota Township for the sum of thirteen thousand which I have sold to S. P. Adams [plaintiff]," such check and memorandum constitute a sufficient written memorandum to satisfy the requirements of the statute of frauds.

2. VENDOR AND PURCHASER, § 4*—*what constitutes valid sale of real estate.* An indorsement on a check signed by the payee of the check which recites that the check is received as part payment on a certain farm of payee which the payee has sold to the signer of the check for $13,000, contains every element necessary to constitute a valid contract for the sale of real estate.

3. VENDOR AND PURCHASER, § 70*—*when contract of sale is to be performed.* Where a contract for the sale of real estate specifies no time for its completion, the law will imply that it is to be performed in a reasonable time.

4. CONTRACTS, § 300*—*what constitutes reasonable time for performance of contract.* What will be a reasonable time for the performance of a contract in which no time is specified is a matter of proof in all the conditions and circumstances that may surround the case.

5. VENDOR AND PURCHASER, § 351*—*when evidence does not show unwillingness of purchaser to perform.* In an action at law to recover damages for defendant's breach of his contract to convey his farm to plaintiff, that plaintiff insisted that defendant give him a deed signed by defendant and his wife, though the contract con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tained no stipulation that defendant's wife should join in the deed, is not sufficient to show that plaintiff was unwilling to perform according to the terms of the contract.

6. VENDOR AND PURCHASER, § 74*—*when defense of purchaser's failure to perform is waived.* In an action at law to recover damages for defendant's breach of a contract to convey his farm to plaintiff, the defense that plaintiff did not offer to perform within a reasonable time is waived where, each time that plaintiff offered to perform, defendant made a different excuse for not performing and, at no time after the execution of the contract, tendered any deed or did any act towards performance, never at any time demanded payment of the purchase price and never claimed a right to refuse the conveyance on the ground of plaintiff's failure to offer to perform within a reasonable time.

7. VENDOR AND PURCHASER, § 343*—*what is measure of damages in case of breach of contract.* In an action at law to recover damages for breach of a contract to convey land, the measure of damages is the increased value of the land, if any, at the time of the breach of the contract, above the contract price.

Appeal from the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920. *Certiorari* denied by Supreme Court (making opinion final).

O'HARRAS, WOOD & WALKER and MILLER & WALKER, for appellant.

LAWYER & HAINLINE and FLACK, FLACK & KERMAN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellee brought his action in assumpsit against appellant to recover damages for the breach of an alleged contract for the sale of 80 acres of land situated in Sciota township, McDonough county, Illinois. The jury assessed appellee's damages at the sum of $2,000, and a judgment was rendered on this verdict.

The following reasons have been presented to us

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

why the judgment should not be sustained: First, that there was no valid contract of sale entered into between the parties; second, appellee was not willing to perform according to the terms of the contract; third, appellee did not attempt to perform within a reasonable time; fourth, the damages are excessive.

Appellant did not testify himself nor introduce any evidence on his own behalf, and the proofs therefore, in so far as they are competent, are uncontradicted. On September 12, 1917, appellee and appellant met on the street in the Village of Good Hope and had a conversation in the presence of the witness Allison, who was a banker in that town. As a result of this conversation the parties to this suit executed the following check and memorandum:

"S. P. Adams                                    No. 1756
        Dealer in Horses
                    Good Hope, Ill., Sept. 12, 1917
"Pay to the order of O. A. Pendarvis........$800.00
Eight Hundred ..........................Dollars
                                        S. P. Adams.
"To Good Hope State Bank
    Good Hope, Ill.
"Received the within check as part payment on my 80 acre farm in Sciota Township for the sum of thirteen thousand which I have sold to S. P. Adams.
                    · O. A. Pendarvis."

After appellant had signed the memorandum on the check he handed it to Allison with directions to hold it until he could get in and fix up the deed. A general conversation followed, the substance of which was that appellant would deposit a deed conveying the land to appellee with Allison, and appellee would thereupon place $5,000 with Allison and the latter would hold both the deed and the $5,000 until March 1, 1918, when appellee was to receive the deed and appellant the full purchase price for the property. Appellant also told Allison that he would bring in the old deeds for the purpose of having the latter draw

up a deed taking the description of the land from the old deeds. About 6 weeks afterwards appellant brought his old deeds to Allison and told Allison that his wife's name was Lena R., and Allison made a memorandum of this name on the envelope containing the old deeds. Allison told appellant that he would prepare the deed in a few days when it could be executed, but appellant never executed the deed. About a month after the contract for the sale of the land was made, appellee met appellant on the road north of Good Hope and told him that he ought to get the deed and put it in the bank and appellant replied that he would. In the following January, appellee again met appellant at the home of one Charles Smith, and again asked him about fixing the deed and also about hauling some lumber from Swan Creek to build a house on the property for a tenant. Appellant replied that it would be all right but that he had hogs in there and to keep the gate shut. On March 1, 1919, appellee went to Good Hope and delivered his check for $12,200, payable to the order of appellant, to Allison, who was holding the original check for $800, and directed Allison to deliver the checks to appellant when the latter left the deed for the 80 acres. Appellee had funds in the bank to meet the checks. Appellant did not appear at the bank on March 1, and appellee, on March 4, asked him over the telephone why he hadn't been down to fix up the deal and appellant replied that he had made different arrangements and that he would come down the next day and fix it up some way. On March 6, appellee saw appellant in the City of Macomb on the street and told him he was going to sue him. Appellant said that there was a mortgage on the place and if appellee wouldn't get in too big a hurry it would be all right, to which appellee replied that if that was all the matter he would wait a month, if appellant and his wife would sign the deed. On March 8, appellee

and his counsel saw appellant in the office of the latter's attorneys and tendered him $13,000 in cash and requested a deed executed by appellant and his wife. Appellant refused to take the money or deliver the deed. The proofs also show that the 80 acres in question was the only 80 acre tract of land owned by appellant in Sciota Township.

It cannot be seriously contended but that the $800 check signed by appellee and the written indorsement thereon signed by appellant constitute a written memorandum sufficient to satisfy the requirements of the statute of frauds. *Ullsperger v. Meyer*, 217 Ill. 262, and cases cited therein. Every element necessary to constitute a valid contract for the sale of real estate is contained therein. No time for the completion of the contract is specified, but the law will imply that it was to be performed within a reasonable time and what would be a reasonable time would be a matter of proof under all conditions and circumstances that might surround the case. *Ullsperger v. Meyer, supra.*

It is claimed that appellee was not willing to perform according to the terms of the contract for the reason that he was willing to pay the purchase money only on condition that he received a deed executed by appellant and his wife, while there is nothing in the contract stipulating that the deed should be executed by the wife, and the case of *Bostwick v. Williams*, 36 Ill. 65, is cited as sustaining this contention. This case does, in effect, hold that the inchoate right of dower is not an incumbrance, and that such a contract is satisfied by the execution of the deed by the vendor alone without a release of the dower right of his wife. This doctrine has not been approved or followed in later cases. In the case of *McCord v. Massey*, 155 Ill. 123, where the point was directly involved, it was held: "A right of dower is an incumbrance, within the terms of that covenant, and it is immaterial whether that right of dower is inchoate

or consummate." In the case of *Cowan v. Kane*, 211 Ill. 572, the case of *McCord v. Massey* is approved and it is further held: "When a party has contracted for a title free from encumbrance he is not required to accept a deed subject to an inchoate right of dower, but if he is willing to accept a part performance he may do so, and the seller will not be permitted to take advantage of a defect in his title." Counsel for appellant also cites a number of cases involving the right for specific performance of contracts for the sale of real estate where the wife of the vendor did not sign the contract, which hold that upon a bill for the specific performance of such a contract the purchaser must accept the deed executed by the seller, pay the purchase price and rely upon the covenant of warranty in the deed. The reason announced in all such cases is that a court of equity cannot compel the wife to execute the deed, and as the value of her inchoate right of dower is unascertainable, no rebate therefore can be deducted from the purchase price. The case at bar is a suit at law and appellee is entitled to recover, if any, the amount of damages sustained by reason of the failure of appellant to deliver to him a deed conveying title free from incumbrances.

The contention that appellee did not offer to perform within a reasonable time cannot be sustained. Regardless of the objections to the competency of some of the evidence admitted, appellant has waived that defense. Each time that appellee attempted to have appellant make the conveyance, a different excuse or reason for his not doing so was made by the latter. He first said that he had made other arrangements and at another time that there was a mortgage upon the place, and finally he seeks to excuse himself because appellee demanded that the deed should be executed also by his wife. At no time after the contract was executed did appellant tender any deed or do any act towards the performance of his part of

the contract, and never at any time demanded of appellee the payment of the purchase price and never claimed a right to refuse to make the conveyance on the ground that appellee had not offered to perform within a reasonable time. In the case of *Gibson v. Brown*, 214 Ill. 330, where a similar question was involved, the court said: "By placing the refusal to perform the contract on those grounds he waived all other contentions which he now makes as a reason why he should not perform the contract."

Lastly, it is claimed that the damages are excessive. The measure of damages is the increased value of the land, if any, at the time of the breach of the contract above the contract price. *Dady v. Condit*, 188 Ill. 234; 209 Ill. 488. The amount of the damages assessed by the jury is sustained by the proofs.

We are of the opinion that no errors appear in the record sufficient to cause a reversal of the judgment and the same is therefore affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE WAGGONER took no part in the decision of this case.