JOHN J. SPANGLER *et al.*, Plaintiffs and Counterdefendants-Appellees and Cross-Appellants, *v.* GEORGE W. HOLTHUSEN, Defendant and Counter-plaintiff-Appellant and Cross-Appellee.

Second District    No. 76-446

Opinion filed June 19, 1978.

Allan L. Blair, of Chicago, and James M. Allen, of Dixon, for appellant.

Edward F. Diedrich and James R. Buck, both of De Kalb, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs, John J. Spangler and Helen C. Spangler, appeal from an order of the Circuit Court of Lee County finding they had breached an agreement to sell real estate to defendant, George W. Holthusen. Defendant appeals from that portion of the order which assessed no damages in favor of defendant as a result of plaintiffs' breach of the contract. Defendant has also filed a motion in this court, pursuant to Supreme Court Rule 366 (Ill. Rev. Stat. 1973, ch. 110A, par. 366), for leave to amend his complaint to seek a decree of specific performance of the contract in issue should we determine he is not entitled to money damages for plaintiffs' breach. We have taken that motion with the case.

Plaintiffs' cross-appeal arises from a complaint filed by them in which the Spanglers, owners of the farm which is the subject of this case, sought specific performance of and a declaratory judgment on an installment land sale contract entered into between them and Holthusen on December 10, 1973. They also sought damages alleged to have arisen from Holthusen's claimed breach of the contract. Defendant Holthusen, thereafter, filed a separate action against the Spanglers in which he sought damages for an alleged loss of profits arising from their claimed breach of the same contract. The cases were consolidated for trial and the parties now each appeal from portions of the order and judgment entered by the trial court.

The contract provided for the sale by the Spanglers of their 247-acre farm in Lee County to Holthusen for $140,000. It included some take-out privileges by Holthusen but limited payments toward the purchase price to $15,000 each year. It provided for a closing of the transaction on March

1, 1974, and for a written notice by sellers if they chose to cancel the contract in the event of a default by the purchaser. On December 24, 1973, two weeks after executing this contract and without informing the Spanglers, Holthusen entered into a written agreement to sell or assign his interest in the Spanglers' farm to Leslie Richardson for the sum of $293,250 with possession of the farm to be delivered to Richardson by April 30, 1974. It is the $153,250 loss of profit on that sale which Holthusen seeks to recover from the Spanglers as a result of their claimed breach of the land sale contract.

In their cross-appeal, the Spanglers contend the trial court erred in its finding they breached the contract with Holthusen. This was an installment land sale contract entered into by the parties on December 10, 1973, at which time Holthusen made a $5,000 down payment to be held by the real estate broker until the transaction was closed on March 1, 1974. On the March 1 date, Holthusen was to make a further payment of $20,000 and receive possession of the farm and the Spanglers were to deliver a warranty deed for the farm to an escrow agent to be ultimately delivered to Holthusen when he had completed the payments provided for in the contract, but not before March 1984. The closing of the transaction on March 1, however, was extended by agreement of the parties to March 15 but, while the Spanglers did then appear at their attorney's for that purpose, Holthusen failed to do so or to make the $20,000 payment due at that time. Through their attorneys, the Spanglers agreed to extend the closing date to March 23, 1974, and, there still being certain disagreements to resolve then, it was again postponed. On April 17 Holthusen caused his check for $20,000 to be delivered to the Spanglers' attorney, together with other documents pertinent to the completion of the transaction, and the parties all met on April 24 for that purpose. At that time the Spanglers declined to accept Holthusen's uncertified check and the parties met again on April 26 whereupon Holthusen tendered $20,000 in cash which was also refused by the Spanglers.

The Spanglers contend Holthusen breached the contract by his failure to make the $20,000 payment on March 15 when it was due and that such breach became substantial when he continued to fail to tender payment of that sum until April 17 thus justifying the Spanglers to consider the contract terminated. (6 Corbin on Contracts §1253 (1962).) They suggest title objections which had been raised by Holthusen's attorney and prevented the March 15 closing (certain pipe-line easements and the regulations of a soil conservation district affecting the subject property) were not unusual objections and could have been readily checked, but, although Holthusen could easily have done so, he failed to do so before the closing. The Spanglers assert that by reason of the unwarranted delay occasioned by Holthusen they were entitled to be compensated for

damages sustained by them and they sought to renegotiate certain terms of the contract with Holthusen to that end. The Spanglers believed the contract should be adjusted to provide for lost interest they had sustained on the $20,000 payment to have been made by Holthusen on March 15, to recovery of the further interest paid by them on a loan for the purchase of another farm which they had intended to finance with Holthusen's $20,000 payment and for costs incurred by them in commencing spring plowing when it appeared that this transaction might not be carried out.

Holthusen contends, however, it was the Spanglers who breached the contract as the closing delays had either been agreed to by the parties or not caused by him. He notes, too, that the contract provided for a remedy should the purchaser fail to comply with its terms whereby the seller could then declare the contract cancelled or forfeited by giving written notice thereof to the purchaser. In that event, at the expiration of 30 days after such notice the agreement would be at an end if, in the intervening period, its terms had not been complied with by the purchaser. The Spanglers concede they did not exercise that provision for termination of the contract. Holthusen also points out that his title objections were recognized by the Spanglers' attorney as matters which must necessarily be cleared up and that in a letter to Holthusen's attorney on April 1, Spanglers' attorney informed him that some of the objections had been waived and the balance would follow. This letter also asked that a new closing date be determined and that Holthusen remit the $20,000 payment required by the contract. Thereafter, on April 17, Holthusen did cause his $20,000 check and other documents requested by Spanglers' attorney to be sent to him. While Holthusen also argues that the Spanglers actually wished to avoid the sale to him under the contract as they believed they could sell the farm to another party for a price $40,000 to $50,000 more than he had agreed to pay, that contention has no support in the evidence. We note, too, that the Spanglers commenced this action against defendant on December 12, 1974, for specific performance of their agreement with Holthusen or damages; it is not realistic to expect them to have taken that action if the more profitable opportunity to sell their farm had been possible.

While we are persuaded from the evidence in this case that the Spanglers declined to complete the sale of the property to Holthusen because they sought to recover losses sustained by them as a result of the delayed closing which they believed were attributable to him, it is apparent the Spanglers had no basis on which to do so. The first delay in closing occurred on March 1, 1974, and was occasioned by the Spanglers who were taking a trip abroad; on March 15, the date to which all parties had agreed to extend the closing, apparently valid title objections were still to be settled; on April 17, when requested, Holthusen did tender his

check for the closing payment of $20,000 and it was accepted without objection by Spanglers' attorney; on April 24, for the first time, the Spanglers objected to the personal check. On April 26, however, the Spanglers also refused to accept the $20,000 payment in cash then tendered by Holthusen and declined to complete the sale of the farm to him in accordance with the contract.

■■■ As the Spanglers correctly argue, a material or total breach of the contract by Holthusen would entitle them to seek compensation for damages sustained and, in addition, would be a proper cause excusing the Spanglers from further performance of their contractual duties. (*Anderson v. Long Grove Country Club Estates, Inc.* (1969), 111 Ill. App. 2d 127, 139, 249 N.E.2d 343, 349; see also 35 Ill. L. & Prac. *Vendor and Purchaser* §161 (1958).) Nor was the termination or forfeiture remedy provided for in the contract exclusive; it left the Spanglers with the right to seek any other legal remedy available to them. (*Anderson*, 111 Ill. App. 2d 127, 140, 249 N.E.2d 343, 350.) The availability of the notice provision as a means to terminate the contract, however, and the failure of the Spanglers to exercise it upon the claimed default of Holthusen on March 15, 1974, or at any other time thereafter, is pertinent to a determination of whether there was a contract between the parties subject to being breached by the Spanglers on April 26, 1974, as found by the trial court. If the Spanglers had not earlier terminated the contract, their refusal to complete the transaction with Holthusen on April 26 must be considered in that light. John Spangler testified he considered the contract had been forfeited by Holthusen by his failure to make the $20,000 payment on March 15 and that a new agreement then had to be negotiated between the parties. The Spanglers were apparently willing to proceed under the terms of the contract but with additions to it requiring Holthusen to recompense them for the losses they believed were caused by the delay in closing. When Holthusen declined to do so on April 26, the Spanglers refused to proceed with this transaction. It was not until this action was filed in December of 1974 that the Spanglers brought any claim against Holthusen and they then sought both specific performance of the contract and damages for its breach.

■■ We believe that the Spanglers were obliged to communicate to Holthusen their election to terminate the contract if they considered that he breached it on March 15; the contract provided the purchaser was entitled to such notice and the chance to avoid forfeiture of the contract by coming into compliance with it. (See *Kelly v. Germania Savings & Loan Association* (1963), 28 Ill. 2d 591, 595, 192 N.E.2d 813, 816; *Kirkpatrick v. Petreikis* (1976), 44 Ill. App. 3d 575, 358 N.E.2d 679.) "Any act by the injured party indicating an attempt to continue will operate as a conclusive election, not depriving him of his right of action from the

breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part." 17 Am. Jur. 2d *Contracts* §447 (1964).

■■ From our examination of the record we find no basis upon which the Spanglers could consider that Holthusen materially or substantially breached the contract so as to excuse further performance by them. We conclude, as did the trial court, that the contract was in full force and effect on April 26, 1974, and that the Spanglers breached it by their failure to complete the transaction at that time.

After the trial court determined the Spanglers breached the contract, Holthusen contends the court erred in denying him recovery of damages sustained as a result thereof and suggests he is entitled to the $150,250 loss of profits suffered when he was unable to resell the Spanglers' farm to Leslie Richardson pursuant to his contract with Richardson.

■■ The circumstances under which lost profits might be a proper element of damages when sustained because of an inability to resell real estate after a breach by the initial vendor of his contract to sell the property has not been discussed directly in the Illinois cases we have seen. The parties both argue from the general rules relating to damages for breach of contract as they relate to lost profits arising from other subject matters and we perceive no reason for application of a different rule in this case. (See Annot., 11 A.L.R. 3d 719, 721-22 (1967); 5 Corbin on Contracts §1015 (1964); 15 Ill. L. & Prac. *Damages* §33 (1968).) As formulated in the early case of *Hadley v. Baxendale* (1854), 9 Exch. 341, 156 Eng. Rep. 145, 5 E.R.C. 502, recovery of lost profits may be allowed as an element of damages for breach of contract where both parties, at the time of the making of the contract, contemplated that such profits would be lost if the contract were breached. Similarly, in *Snell v. Cottingham* (1874), 72 Ill. 161, a claim was brought against a party for the recovery of $44,000 as damages for interest lost on a bond issue which would have been saved if he had completed his construction project in the time required by his contract. In rejecting such a measure of damages in that case, the court stated:

> "We do not understand upon what principle the rule of damages contended for can be maintained. How can it be said, the damages resulting from the non-performance of a contract between parties can be measured by a mere private agreement between others, to which they are strangers? It is, no doubt, true, if the road had been completed by the 1st day of January, 1872, appellants would have obtained a rebate of the interest on the total amount of the construction bonds; but if it was intended to hold appellees responsible in case of non-performance of their contract, according to the terms of their private agreement with the lessee of

the road, they should have made it a part of the contract that damages should be so measured. Although appellees may have known there was such an agreement between appellants and the lessee, they will not be presumed to have contracted with reference to any such mode of ascertaining the damages, and in the absence of any special contract they are bound by no such rule. Had it been known it was expected appellees would be held responsible for such extraordinary damages, it is hardly probable they would have entered into the contract, for the consequences of a failure for only a few days would be most disastrous. The damages insisted upon, under this rule, exceed $44,000—a sum enormously out of all proportion to the amount to be paid for the entire work." 72 Ill. 161, 169-70.

■■ In a recent case, cited as authority by both parties, the legal principles to be considered are summarized as follows:

"There are three general principles which courts apply to determine when lost profits will be allowed as compensation in contract cases. Lost profits will be allowed only if (1) their loss is proved with a reasonable degree of certainty [citations]; (2) the court is satisfied that the wrongful act of the defendant caused the loss of profits [citation]; and (3) the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into [citations]. When the profits which are sought are those arising out of the breached contract, those profits are considered one of the elements of the contract, and are presumed to have been within the contemplation of the defaulting party at the time he entered into contract; they are recoverable if proved with reasonable certainty. However, when the profits sought are those which would have arisen only out of a collateral transaction, not only must these profits be proved with reasonable certainty, but also it must be shown that they were reasonably made within the contemplation of the defaulting party when the contract was made. [Citation.] Notice of the possible existence of collateral profits, given after execution of the contract, will not satisfy this requirement. [Citations.]" *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 538-39, 346 N.E.2d 494, 496-97; see also *Excelsior Motor Manufacturing & Supply Co. v. Sound Equipment, Inc.* (7th Cir. 1934), 73 F.2d 725, 728-29.

Holthusen argues that because the Spanglers were aware he was buying the property for resale when the contract was entered into on December 10, 1973, they then knew that their breach of the contract would cause him to lose profits from such a resale and lost profits must now be considered as a proper element of damages. The Spanglers were aware

that Holthusen was a land developer, as the real estate agent had so described him to them, and they might also have suspected from the limited take-out provisions of the contract that he intended to subdivide and sell portions of the land; they also knew he would not secure title to the property for 10 years or until 1984. The subsequent agreement between Holthusen and Richardson was executed some 10 days after the contract with the Spanglers and they were not informed of it.

Other jurisdictions have considered the circumstances in which lost profits might be held to be within the contemplation of the parties at the time of contracting. In *Merritt v. Adams County Land & Investment Co.* (1915), 29 N.D. 496, 151 N.W. 11, the court held that both the amount of lost profits expected to result from a breach of a land sale contract as well as the existence of a collateral agreement for resale must be made known to the vendor at the time of the original agreement to convey before lost profits might thereafter be recoverable for the vendor's refusal to convey. In *Susi v. Simonds* (1951), 147 Me. 189, 85 A.2d 178, recovery of lost profits from a planned use of the property by the vendee was denied where the vendee had not informed the vendor of the claimed special circumstances which would give rise to his special damages on a breach and such damages were not considered to be within the contemplation of the parties when they entered into the contract. See also *Sanderlin v. Willis* (1894), 94 Ga. 171, 21 S.E. 291.

■■ We conclude Holthusen may not charge the Spanglers with the claimed profits lost from his proposed collateral transaction with Richardson which arose after the Spanglers entered into the contract with him and of which they were not informed. The general knowledge that Holthusen developed land and might sell off some part of the farm in question to others during the 10-year term of the contract is insufficient to charge the Spanglers with knowledge of and liability for the unusual loss of profits claimed here. As stated by Justice Holmes in *Globe Refining Co. v. Landa Cotton Oil Co.* (1903), 190 U.S. 540, 544-45, 47 L. Ed. 1171, 1173-74, 23 S. Ct. 754, 755-56, where lost profits were sought as arising from a breach of contract:

> " '[A] person can only be held to be responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract.' [Citations.]
>
> * * *
>
> It may be said with safety that mere notice to a seller of some interest or probable action of the buyer is not enough necessarily and as a matter of law to charge the seller with special damage on that account if he fails to deliver the goods."

Holthusen contends further that should this court determine lost profits

were not a proper element of damages he would still be entitled to damages under the evidence presented. He argues correctly that the measure of damages for breach of a contract for the sale of land is the increased value of the land over the contract price at the time of the breach. (*Dady v. Condit* (1904), 209 Ill. 488, 496, 70 N.E. 1088, 1092-93; *Adams v. Pendarvis* (1920), 217 Ill. App. 535, 541; 35 Ill. L. & Prac. *Vendor & Purchaser* §176 (1958).) As the contract price for the land agreed upon by Holthusen and the Spanglers was $140,000, Holthusen then looks to the price of $293,250 which Richardson agreed to pay ten days later as the only evidence in the record of its "increased value" as of the date of the breach by the Spanglers on April 26, 1974, and determinative of his damages.

This is, indeed, an unusual argument, particularly in view of the trial court's determination that Holthusen's contract with Richardson was no longer in existence on April 26th when the Spanglers breached their contract with him. Richardson testified Holthusen had returned his down payment to him sometime in March of 1974, apparently believing he would not be able to cause the Spangler property to be conveyed to Richardson within the time agreed upon between them.

We also note that Holthusen's complaint in the trial court was very general, simply alleging that he had been damaged in the sum of $153,250 as a result of a breach of the land sale contract by the Spanglers. In the trial of the case he presented only his theory that he was entitled to the lost profits which we have discussed and it was solely on that basis that the trial court considered and determined the issues presented to it. Holthusen did not present argument or evidence in the trial court of his present alternate theory of damages nor did he or the Spanglers present evidence of value of the subject property at the time of the breach of contract with a view to fix damages under the principle now urged by Holthusen. Had he contended for such a measure of damages in the trial court the Spanglers could have sought to present more conclusive evidence of the value of the property on the date of their breach for the trial court to consider.

■■ The purchase price of $293,250 agreed to by Richardson on December 24, 1973, cannot properly be considered as evidence of the increased value of the land on April 26, 1974, over the contract price of $140,000 agreed to by the Spanglers earlier in December 1973 and we will not do so.

■■ Holthusen has filed a motion in this court to amend the prayer for relief contained in his countercomplaint to read alternatively that if the court denies him the damages he seeks that the court grant him a decree of specific performance. Supreme Court Rule 366 provides that the reviewing court may "in its discretion, and on such terms as it deems just

84

\* \* \* exercise all or any of the powers of amendment of the trial court." (Ill. Rev. Stat. 1973, ch. 110A, par. 366(a).) The instant case was heard in the trial court on the theory that Holthusen was entitled to recover as damages profits lost by reason of the Spanglers' breach of contract. By seeking to amend the prayer to provide for specific performance, Holthusen seeks to alter his theory of the case on appeal. We find this would result in prejudice to the Spanglers and in our discretion decline to allow the amendment. *Russell v. Rici* (1966), 67 Ill. App. 2d 98, 106-07, 213 N.E.2d 566, 570-71; *Salitan v. Neff Feed Co.* (1953), 351 Ill. App. 127, 130, 114 N.E.2d 320, 321.

For the reasons stated the judgment of the Circuit Court of Lee County is affirmed.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.