## Ellen H. Laughlin, Appellant, v. William G. Dalton, Appellee.

### Gen. No. 6,200.

1. FRAUDS, STATUTE OF, § 3*—*when promise to repay money loaned to promisor's wife within statute.* A promise to repay money loaned to the promisor's wife to pay a bill, *held* within the Statute of Frauds and unenforceable in the absence of a new consideration moving to the promisor.

2. ASSUMPSIT, ACTION OF, § 89*—*when evidence insufficient to sustain judgment for plaintiff in action on promise to pay debt of another.* In an action based on the promise of one to pay the debt of another when he should be able, *held* that a judgment for the plaintiff could not have been sustained in the absence of proof that the defendant was able to pay the debt when the action was brought.

3. HUSBAND AND WIFE, § 75*—*when husband not liable for money loaned to wife.* A husband *held* not liable for money loaned to his wife to pay a butcher's bill so as to facilitate the husband's obtaining a loan.

Appeal from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 14, 1916.

JOHN W. WELCH and GEORGE E. PHILLIPS, for appellant.

ERNEST S. GAIL, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Appellant, Ellen H. Laughlin, sued the appellee, William G. Dalton, the husband of her deceased sister, in a justice court to recover one hundred dollars which she loaned his wife, her sister, in her lifetime. The case was tried in the County Court on appeal. At the close of the plaintiff's evidence, the court directed a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

verdict for the defendant and entered judgment thereon, from which this appeal is taken.

The court excluded a letter offered by the plaintiff in evidence and error is assigned thereon. We will consider the evidence, including that letter, in determining whether a verdict could reasonably be found for the plaintiff.

Appellant testified that in November, 1912, she sent, or caused to be paid to her sister, one hundred dollars; that her sister died February 8, 1913, and at the time of her death was living with appellee at Lake Forest, Illinois; that she received a letter from her sister November 8, 1912, in which she, the sister, was speaking of a loan that her husband was about to obtain from a bank, and said she was afraid the bank would inquire if the bills were paid, and if they learned they were not they might refuse the loan, and that she had asked "Rosie" to get the money from appellant until everything would be settled down again and then she would pay it back, but that Rosie said she could not get it on appellant's book and gave it to her from her own, and she would pay Rosie as soon as the house was settled. This is the letter that was excluded, and if material at all it is because it tends to show the purpose for which the money was desired. It is not clear how this transaction developed into the one hundred dollar loan in question here, but it does appear that appellant loaned her sister one hundred dollars in November and that the money was used to pay a butcher's bill, and there is an inference in the testimony that the butcher's bill was a family expense that had been incurred before the payment. Appellant testified that she did not loan the money to appellee and never told him of the transaction during the life of her sister, but that immediately after her sister's death appellee spoke to her of bills that he had to pay and she said to him: " 'You can't be so much in debt, because I gave you one hundred dollars to straighten out all

those debts,' and he said, 'You did,' and I said, 'Yes, I did,' and he said, 'Well, I will see that you get your money back, Ellen,' and I said, 'I did not ask for the money, but I can't understand how you are so much in debt,' and he said, 'That is all right, you need your money and I will see that you get it.'" She introduced in evidence a letter afterwards written by appellee apparently to her and signed by him after calling appellee to the stand to identify the letter and his testifying that he wrote it but never sent it to her, in which letter is said: "As for the money you claim Delia owed you, it will be impossible for me to pay it for some time. I have drawn notes to settle other accounts which I had to settle or have suit started against me, and still owe the doctors, all three, but it will all have to wait until I can get it, so there is no use of you making a special trip to see me." The foregoing is all the testimony upon which appellant can rely for a recovery.

The one hundred dollar loan was unquestionably made to appellee's wife and not to him. It was therefore the debt of "another" and appellee's promise to pay it was within the Statute of Frauds. We see nothing in the facts to remove it from the operation of that statute. It is said in 20 Cyc. 188:

"A promise to pay the debt of another is within the statute unless it is founded on a new and independent consideration passing between the newly contracting parties and independent of the original contract. In the absence of such a consideration the promise is collateral."

That is a fair statement of the law as held in Illinois. (*Eddy v. Roberts*, 17 Ill. 505; *Resseter v. Waterman*, 151 Ill. 169; *Borchsenius v. Canutson*, 100 Ill. 82, 92.) A collateral promise whether made before or after or contemporaneous with the promise of the primary or original debtor is void unless in writing. (20 Cyc. 163.) The above statement of the law as to the effect of a consideration in taking the case out of the

statute seems to dispose of any query that may arise under the facts in the present case, whether the fact that the one hundred dollars was borrowed and used to pay a debt for which appellant was liable would furnish a consideration to support his oral promise to pay it. There was no ''new and independent consideration'' to support the promise. If we read the letter signed by appellee as a promise to pay if he became able, it still would not support a judgment, because there is no proof that his condition had changed, or that he was able to pay the debt when the suit was brought.

Appellant cites a number of authorities from other jurisdictions to support the proposition that: ''Money loaned to a wife when its application can be traced to the purchase of necessaries, is necessaries for which the husband is liable.'' There is an interesting field of inquiry presented in that statement; but assume it to be the law without qualification, still we do not see its bearing on the question here. If a husband fails to supply his wife with necessaries she may, while cohabitating with him, or upon his desertion of her, bind him by her contracts with third persons for such purpose. (21 Cyc. 1216.) But there is no proof or inference in the record that appellee failed to provide his wife with necessaries. No proof that the butcher's bill was for articles furnished that would fall within the meaning of the term ''necessaries.'' It may or may not have been for necessary food for the family. Assume that it was, still this action is not for necessary food furnished the wife. It is not even for money required to pay a bill that would enable the wife to procure necessary food. It is for money loaned to pay a debt and keep the husband's credit good enough so he could obtain a loan from a bank for another purpose, probably the purchase of a home.

Appellant argues that section 15 of chapter 68 of our Revised Statutes (J. & A., vol. 3, ¶ 6152) in some

way aids in making appellee liable to pay the debt. We do not see the application. This statute makes the "expenses of the family" chargeable upon the property of both husband and wife and provides that they may be sued therefor jointly or separately. If the debt paid with the one hundred dollars loaned was for a family expense it was one for which appellee and his wife were liable, and appellant would have no greater rights than if it paid a debt for which appellee was liable. It is not argued, and we see no ground for argument, that from the mere fact that a party desires to pay the debt of another and borrows the money from a third party for that purpose and pays the debt, that an action at law can be maintained by the party loaning the money against the original debtor to recover the amount so loaned and used. It still remains the debt of the party borrowing the money and not of the party whose debt was paid. And whatever the law may be as to the liability of a husband for money loaned his wife to purchase necessaries or to purchase articles for family use, we see no right of recovery here, and conclude that the trial court did not err in directing a verdict for the defendant. The judgment is affirmed.

*Affirmed.*