(No. 31991.—

Lucy Walden, Admx., Appellant, *vs.* Chicago and North Western Railway Company, Appellee.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

James A. Dooley, of Chicago, for appellant.

Lowell Hastings, and Drennan J. Slater, both of Chicago, (John L. Davidson, Jr., of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

The plaintiff, Lucy Walden, administratrix of the estate of Ole Walden, deceased, commenced an action in the circuit court of Cook County, under the Federal Employers' Liability Act, (45 U.S. C.A. par. 51, *et seq.,*) to recover for damages resulting from the death of decedent. A trial before a jury resulted in a judgment for $25,000 in favor of the plaintiff. This judgment was reversed by the Appellate Court without remanding. On petition of the plaintiff we have granted leave to appeal for further review.

On the day of his death the decedent was employed by the defendant as a foreman in charge of a crew of workmen engaged in repairing and rebuilding a bridge maintained by defendant across its railroad yards in Proviso, Illinois. The bridge crossed over the railroad yards, at a height not interfering with the operation of the railroad yards and the movement of trains therein, for a distance of over a quarter of a mile. Trains of cars engaged in interstate commerce passed beneath the bridge and were

switched and stored in the Proviso yards. The bridge had been partly dismantled and new wooden stringers were being put in place, over which a new top deck was being laid. It was the decedent's job to supervise the work of placing the stringers and laying the wooden top deck of the bridge. At the time of his fatal injuries a stringer had just been raised by a hand-operated crane and placed on the ironwork comprising the outside edge of the bridge structure. The decedent was at one end of the stringer, standing on a plank, and another employee of defendant was at the other end of the stringer. Each man was engaged in locating the stringer so that it would come to rest in its proper place. When the stringer was in place a hole in each end of it should rest directly over holes in the flanges of the I beams on which it rested. It was necessary to stoop down to determine if these holes were in proper alignment. While thus engaged the decedent fell 24 feet to the ground below, and the plank on which he had been standing fell on top of him. Decedent's death resulted soon thereafter.

The complaint charged that at the time of the death of decedent the defendant was engaged in interstate commerce and that the injuries which resulted in decedent's death were received while he was engaged in duties which were in furtherance of interstate commerce, and which directly, closely and substantially affected interstate commerce; and that death of the decedent was the direct and proximate result of negligence in violation of the Federal Employers' Liability Act. Specific acts of negligence charged were that the defendant carelessly and negligently placed the wooden planking on the freshly painted steel beams of the bridge; placed the wooden plank on the steel structure without fastening the ends; failed to furnish decedent with a safe place to stand while placing the stringers on the bridge; failed to provide the decedent with a safe place to work; and carelessly and negligently

moved the planking on which decedent was standing so that he fell and suffered fatal injuries. The answer of defendant specifically denied that the injuries of the decedent were received while he was engaged in interstate commerce and denied each of the acts of negligence charged in the complaint.

At the close of plaintiff's evidence the defendant made a motion for a directed verdict which was denied. No evidence was offered on behalf of the defendant. The jury found for the plaintiff and fixed damages at $25,000. Judgment was entered on the verdict for that amount. A motion for judgment notwithstanding the verdict was denied. The Appellate Court held that the trial court erred in not granting the motion to direct a verdict for the defendant and reversed the cause without remanding it for a new trial.

Two errors are assigned as grounds for reversal of the judgment of the Appellate Court. First, that the Appellate Court erred in holding that plaintiff's decedent was not subject to the provisions of the Federal Employers' Liability Act at the time he received the fatal injuries which caused his death. Second, that there was evidence that the death of plaintiff's decedent resulted in whole or in part from the negligence of the defendant. Plaintiff thus raises two questions of law which are within the province of this court to determine.

We direct our attention first toward the work activities of decedent to determine whether or not he was engaged in employment, at the time he received the fatal injuries, which would bring him within the provisions of the Federal Employers' Liability Act, as amended. The act provides in part, "Every common carrier by railroad while engaged in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her

personal representative * * * for such injury or death resulting in whole or in part from the negligence of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment." The 1939 amendment added the following language: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purpose of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (45 U.S.C.A. par. 51.) The defendant is a common carrier by railroad engaged in commerce between the States. For the most part decedent was employed in and about defendant's Proviso railroad yards working on various railroad buildings, equipment and facilities which were related to both interstate and intrastate commerce. During the month just prior to his death he had placed concrete floor stalls and repaired flooring in the roundhouse, repaired smokestacks in the blacksmith's shop, thawed out water lines at the repair yards and at the water-treatment plant, enlarged a blasting boiler section at the freight station, worked on a railroad bridge in the yards, in addition to doing repair work on two highway bridges which crossed over the yards. While he was designated as a foreman, decedent's duties appear to have included those of a general repairman who was, as testified by one witness, subject to call at any time. In its brief defendant concedes that, except for the two highway bridges, the evidence showed that all the facilities upon which the decedent worked were used for both interstate and intrastate locomotives or trains. Plaintiff asserts that if any part of a railroad employee's duties affect interstate commerce he is subject to the Federal Employers'

Liability Act. The test, according to plaintiff, is not what the employee was doing at the moment of injury, but whether any part of his duties affected interstate commerce. Applying that test to the instant case, it is contended that where the greater part of decedent's duties consisted in the maintenance and repair of instrumentalities of interstate commerce he was subject to the act even though he might have been engaged, at the time of the injury, in repairing a bridge which had nothing to do with interstate commerce. Plaintiff, however, does not confine herself to this contention, for immediately thereafter she states that the duties of the decedent in repairing the bridge were actually in furtherance of interstate commerce. It thus becomes necessary to examine the Federal Employers' Liability Act in the light of the duties and activities of the decedent as disclosed by the record.

The applicability of the act, as amended in 1939, to questions similar to those raised in the instant case, was recently considered by this court in *Ernhart* v. *Elgin, Joliet and Eastern Railway Co.* 405 Ill. 577. At that time we made an exhaustive survey and careful analysis of all the leading cases of other jurisdictions, bearing on the questions here presented, and concluded that "the test of the applicability of the Federal statute has been whether the activity in which the employee is engaged at the time of the accident is in furtherance of interstate commerce, or directly or closely and substantially affects such commerce. None of the cases have turned on the broad interpretation that an employee, whose activities and duties at the time of injury do not further or affect interstate commerce, comes within the amended act merely because in some other activity, at some other time or place, his other duties may be in, or affect, interstate transportation. We are constrained to believe that the criterion for the applicability of the act is still the work at which the employee is engaged at the time of his injury. While it need no longer

be shown that the employee was actually engaged in interstate commerce at the precise moment of his injury, it must be shown that his employment at the time was in furtherance of interstate commerce, or that it directly or closely and substantially affected such commerce." Adhering to the rule thus announced, the precise question presented for review is whether it has been shown by the record that decedent's employment at the time of his injury was in furtherance of interstate commerce, or that it directly or closely and substantially affected such commerce.

The bridge in question was commonly designated throughout the proceedings as the "Wolf Road Bridge." For official purposes railroad employees knew it as bridge No. 18½, Proviso. The structure is more than a quarter of a mile in length and so constructed of steel and heavy timbers as to be suitable for vehicular traffic. The record does not disclose who built the bridge but it has been maintained and repaired by defendant since prior to the year 1916. What communities or areas are served by the roadway over the bridge is not revealed, and we have been unable to find any evidence in the abstract of the record, either documentary or otherwise, from which it can be determined whether such roadway is a public or private road. Beneath the bridge are the Proviso switching yards of the Galena division of the Chicago and North Western Railway Company, the defendant herein. Thirty or more tracks are situated underneath the more than a quarter of a mile spanned by the bridge. The switchyards are used to make up and break up trains coming into the yards from various parts of the country outside of the State of Illinois. By reason of the suspended roadway trains of cars may be switched, moved, and stored, and trains broken up and made up for interstate transportation without reference to the movement of vehicular traffic along Wolf road or the necessity to keep the way open for such traffic. A reasonable inference from these facts would be that the mainte-

nance and repair by an interstate carrier of such a long bridge, suspending a roadway across its entire switchyards, was being done in order to facilitate the flow and movement of interstate train traffic in the yards below. The bridge in the case of *Hallstein* v. *Pennsylvania Railroad Co.* 6 Cir., 30 Fed. 2d 595, relied on by defendant, did not facilitate interstate transportation except in eliminating a grade crossing on a public street, in the city of Pittsburg, and the rule of that case, which was decided prior to the 1939 amendment to the act, would not, therefore, be persuasive in the instant case. We have reached the conclusion the record shows that decedent's employment, at the time of his injury, was in furtherance of interstate commerce within the meaning of the Federal Employers' Liability Act, as amended.

The Appellate Court found that decedent was a foreman in full charge of the operations on the bridge and that if there was a failure to provide a safe place to work it was due to his own negligence for which no recovery could be had. Among the cases cited by the defendant in support of the judgment is *McGivern* v. *Northern Pacific Railway Co.* 132 Fed. 2d 213, where recovery was denied on the ground that the only negligence shown by the evidence was that of the injured employee alone, who had failed to remove accumulated ice from the footboards of a switch engine on which he was working, although tools were provided on the engine for that purpose. There was no evidence of negligence on the part of the railroad in that case. In urging a reversal of the judgment of the Appellate Court plaintiff relies on the 1939 amendment to the Federal Employers' Liability Act, (Title 45 U.S.C.A. par. 51) which provides that an employee of an interstate common carrier by railroad shall not be held to have assumed the risk of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents or employees of

such carrier. It is obvious that if there is any evidence that the injury to plaintiff's decedent resulted in whole or in part from the negligence of another employee of the defendant the rule of *McGiven* v. *Northern Pacific Railway Co.* would have no application. The Appellate Court found that there was no fact or circumstance in evidence tending to support the charge of negligence contained in the complaint. The rule is well settled that this court will not review the facts as found by the Appellate Court, unless the facts so found, in themselves, show that as a matter of law a wrong conclusion was reached by that court. (*Briney* v. *Illinois Central Railroad Co.* 401 Ill. 181; *Langston* v. *Chicago and North Western Railway Co.* 398 Ill. 248. Where the Appellate Court judgment reverses a judgment in favor of plaintiff, in an action at law, without remanding the cause for a new trial, it becomes the duty of this court, on review of the Appellate Court judgment, to review the evidence for the purpose of determining, as a matter of law, whether or not there is any evidence which, taken with its intendments most favorable to plaintiff, tends to establish plaintiff's cause of action. *Mueller* v. *Elm Park Hotel Co.* 398 Ill. 60; *Humbert* v. *Lowden,* 385 Ill. 437.

It becomes necessary, therefore, in order to determine the question of law presented by the assignment of errors, that we examine the evidence relating to the occurrence which led to decedent's death. Prior to the time of the fatal accident the bridge had been partially dismantled. The wooden flooring or deck had been removed, as had the stringers on which it was laid. This exposed a rectangular opening or panel bounded by heavy I beams on the north and south sides and by the outside steel structure of the bridge on the other two sides. A four-inch-by-four-inch angle-iron brace extended diagonally from the northeast corner to the southwest corner of the panel, near its bottom edge. The day before the accident two painters

had placed three planks in the panel in such a way as to provide a scaffold from which they could paint the I beams and ironwork around it. Two of the planks were placed crosswise between the I beams, at each end of the panel, and a longer plank, upon which the painters sat as they worked, rested on top of them. The painting of the ironwork was completed at noon on the day of the accident and, although the paint was still wet, a crew moved in to replace the stringers and decking. The first stringer on the west side of the opening had just been lowered into place when the accident occurred. Robert Durrenberger was at the south end of the stringer. Decedent was at the other end of the same stringer. Calvin Durrenberger, a brother of Robert, was on the superstructure of the bridge about halfway between the two men. He had just released the stringer from the hoist as it settled into place. Three other workmen of the crew were on the floor of the bridge just north of the opening. None of the crew saw the beginning of the decedent's fall although he was observed about thirty seconds before that time and was seen on the way down with the plank. Just prior to his fall decedent was standing on the north end of the plank scaffold which had been left there by the painters. That end of the plank was butted close against the I beam where it rested solidly on the bottom six-inch flange. The other end of the plank did not rest on the lower flange of the opposite I beam but was lying on the diagonal angle iron which was elevated about four or five inches higher than the north end of the plank. One witness testified that the south end of the plank was loose and that there was some "play" in it. Due to the difference in elevation and approximately forty-five degree angle of the brace on which the south end of the plank was laid only the east edge of the plank would touch the narrow iron brace unless weight was placed upon it. The decedent was standing on the north end of the plank as the stringer was lowered into place. No one stated whether the other

employee was standing on the south end of the same plank, but it was pointed out by the witness, Calvin Durrenberger, that while the work of setting the stringer in place was being done on the inside of the bridge, the plank afforded the only place where the workmen could stand. A natural inference from this evidence would be that the decedent and his fellow employee were standing on opposite ends of the same plank for the three or four minutes it took to put the stringer in place. It must be remembered, too, that decedent was standing on the solid end of the plank while the other end was loose. In order to determine if the stringer was in proper position it was necessary to stoop down and inspect the alignment of holes drilled in the ends of the stringer to accommodate bolts extending through holes in the middle flange of the I beam on which it rested. Decedent was last seen before he fell as he stooped down to examine these holes, and was heard to announce that the stringer fitted properly in place. A few seconds later his upstretched hands were observed as he fell from the bridge to the ground. The plank fell with him. There is no direct evidence as to what caused decedent and the plank to fall. The whereabouts, at the exact moment the plank fell with plaintiff's decedent, of the workman who had been locating the south end of the stringer in place is not revealed in the testimony. Obviously, he was not on the plank at the time it fell to the ground or he would have fallen with it. There was evidence that the two men were aligning the stringer in place from the inside of the panel; that the plank was the only thing upon which they could stand while placing the stringer in position from the inside of the bridge; that the plank had been placed in the panel the day before by the two painters who were painting the iron work; that the end of the plank where the decedent was working was firm and solid against the I beam; that the other end of the plank was loose and had some "play" in it; that the south end

of the plank rested on the upper edge of an iron brace which had been newly painted that day and was still wet; that the plank did not rest firmly on the iron brace because the brace extended diagonally across the panel at about a forty-five degree angle to the plank and about four inches higher than the end on which decedent was standing; that decedent was seen to stoop down to determine the proper alignment of the holes in the stringer and the I beam on which it rested; that the decedent fell immediately after he was seen to stoop down; that the plank did in fact fall when decedent fell; that his fellow workman at the other end of the stringer did not fall; and that the whole operation of locating the stringer in place took no more than three or four minutes. The complaint charged that the fatal injuries to plaintiff's decedent resulted in whole or in part from negligence on the part of other employees of the defendant railroad. The answer of the defendant denying all the specifications of negligence raised a controverted issue of fact. Whether or not decedent's fellow employee was standing on the other end of the same plank while they were putting the stringer in place was a question of fact for the jury. There was evidence that there was no other place where the workman could stand while performing the operation from the inside of the bridge, as they were doing in this instance. When the other workman left the plank, if he was in fact standing on it, and whether he removed his weight from it in such a manner as to displace it as it lay loosely upon the narrow thin edge of the diagonal iron brace, which the evidence showed was still wet with paint were likewise questions of fact for the consideration of the jury. There was evidence that the plank did in fact fall at the same time decedent fell, and that the other employee did not fall. The position of the two men, the condition of the scaffolding and the iron-work on which it rested, the manner in which the plank was placed, the element of time involved in the placing of

the stringer and the time of decedent's fall were all elements to be considered by the jury on the question of negligence charged in the complaint. After reviewing all the evidence, we have concluded that under the facts shown by the evidence the question of negligence of the defendant was a question of fact for the jury. The Appellate Court erred in holding that there was no evidence tending to support the charge of negligence contained in the complaint.

The Appellate Court reversed the judgment of the trial court without remanding it for a new trial. Where there is any evidence to support the plaintiff's cause of action such a judgment of the Appellate Court is not proper, but if that court should find that the judgment of the trial court is manifestly against the weight of the evidence it should reverse and remand the cause for a new trial. (*Mitchell* v. *Louisville and Nashville Railroad Co.* 375 Ill. 545.) Since defendant has waived all right to file a motion for a new trial, there will be no necessity to remand the cause. The judgment of the Appellate Court is reversed, and the trial court's judgment for the plaintiff on the verdict for $25,000 is affirmed.

*Appellate Court reversed; circuit court affirmed.*