RUBEN RIVENBARK, d/b/a Rivenbark Drywall Company, Plaintiff-Appellee, *v.* FINIS P. ERNEST, INC., Defendant-Appellant.

Fifth District   No. 75-316

Opinion filed April 22, 1976.

Walker & Williams, P. C., of Belleville (Roger L. Vetter, of counsel), for appellant.

Sam S. Pessin, of Belleville, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This appeal arises out of a bench trial of the present contract action and consolidated cases involving mechanics' liens concerning material and for labor supplied to defendant-appellant, a general contractor, or his subcontractors on a St. Clair County Housing Authority construction project. Defendant herein entered into a written contract on May 11, 1971, with plaintiff, a drywall contractor, wherein plaintiff agreed to furnish labor and materials for construction of buildings of various types in the housing project. The total contract price was $218,632.59, which

was computed by first multiplying the unit price per building type by the number of buildings of that type to be completed and then taking the sum of these products plus extras. On November 9, 1972, plaintiff filed a two-count complaint against defendant, alleging that defendant owed plaintiff $31,828.44 for labor and materials supplied pursuant to the contract and $25,000 for loss of anticipated profits. Plaintiff asserted that defendant wrongfully refused to permit plaintiff to complete the contract. A trial resulted in a verdict of $52,595.24 ($31,210.24 for labor and materials already supplied by plaintiff under the contract and $22,385 for lost profits) plus interest from November 9, 1972, and interest of $530 on plaintiff's note payable to Belleville National Savings Bank. It is from the judgment entered on the verdict and the denial of post-trial motions that this appeal is taken.

The record indicates that the plaintiff has received $16,040.56 in partial satisfaction of the judgment. This amount has been used to recompense several lienholders for materials supplied to plaintiff on the project. These lienholders were parties in the portion of the consolidated cause not the subject of this appeal.

The defendant-appellant presents the following questions for review: (1) whether the trial court erred in awarding damages for lost profits that plaintiff would have realized had he completed his contract; (2) whether plaintiff's failure to produce certain documents requested in a discovery motion was prejudicial to defendant; (3) whether the amount awarded plaintiff as damages on past due interest was excessive; (4) whether the amount awarded for labor and material was excessive.

Contrary to his position in the trial court, defendant on appeal concedes that he materially breached the contract in question. Plaintiff, who was forced to stop work because of defendant's breach before substantial performance of the instant contract, thus properly elected to seek recovery based upon protection of the present value of his expected profits as well as upon expenses already incurred. By the term "profits" we mean the net amount that would have been made by the plaintiff had there been full performance. We do not define "profits" to mean the contract price less the cost of completion, for under the instant circumstances the allowance of expenditures in addition thereto would result in a double recovery for plaintiff. See *Izzo v. City of Loves Park*, 20 Ill. App. 2d 117; 22 Am. Jur. 2d *Damages* §160, at 229-30 (1965).

Defendant initially contends that the trial court erroneously awarded lost profits.

■■ ■ There are three general principles which courts apply to determine when lost profits will be allowed as compensation in contract cases. Lost profits will be allowed only if (1) their loss is proved with a reasonable degree of certainty (*United States v. Penn Foundry &*

*Manufacturing Co.*, 337 U.S. 198, 93 L. Ed. 1308, 69 S. Ct. 1009 (1949); *Billeter v. Halsam Products Co.*, 313 Ill. App. 145; (2) the court is satisfied that the wrongful act of the defendant caused the loss of profits (*Garden City Sand Co. v. Southern Fire Brick & Clay Co.*, 260 Ill. 231; and (3) the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into (*Flug v. Craft Manufacturing Co.*, 3 Ill. App. 2d 56). (22 Am. Jur. 2d *Damages* §§ 171, 174, at 242, 246-48 (1965).) When the profits which are sought are those arising out of the breached contract, those profits are considered one of the elements of the contract, and are presumed to have been within the contemplation of the defaulting party at the time he entered into the contract; they are recoverable if proved with reasonable certainty. However, when the profits sought are those which would have arisen only out of a collateral transaction, not only must these profits be proved with reasonable certainty, but also it must be shown that they were reasonably made within the contemplation of the defaulting party when the contract was made. (*H.G. Holloway & Bro. v. White-Dunham Shoe Co.*, 151 F. 216 (7th Cir. 1906).) Notice of the possible existence of collateral profits, given after execution of the contract, will not satisfy this requirement. *Cramer v. Grand Rapids Show Case Co.*, 223 N.Y. 63, 119 N.E.227 (1918); *Macchia v. Megow*, 355 Pa. 265, 50 A.2d 314 (1947).

■■ Prospective profits recoverable are limited to those which might have been made pursuant to the performance of the particular contract sued on and during the period for which it was to run. The net profits lost by breach of contract are ascertained by deducting from the contract price those expenses necessary for full compliance on the plaintiff's part. (*Sokoloff v. Highway Steel Products Co.*, 335 Ill. App. 573, 82 N.E.2d 509 (abstract opinion).) Problems with this calculation arise in relation to the cost of performance. Since plaintiff's direct cost of performance is often, as here, avoided by the defendant's breach, the general rule is that direct costs (such as labor and materials) are to be deducted from the contract price, these costs being determined by what the plaintiff would have had to pay and not what they would have cost someone else. Annot., 50 A.L.R. 1397 (1927); 22 Am. Jur. 2d *Damages* §178, at 254-55 (1965).

The problem of plaintiff's indirect costs appears to be one of first impression in Illinois. Courts of other jurisdictions have had difficulty with this problem.

> "Some cases take the position that indirect costs—such as rent, salary of office employees, salary of administrative personnel, utilities, and other "overhead" items—are a part of the cost of production, and deduct them from the contract price to determine the net profit recovery. This result is often reached without discussion on the court's part, indicating that counsel did not press

the problem during trial. To the extent that the breach of contract allows the plaintiff an opportunity to enter into other contracts which now bear the same portion of the indirect costs as were to be borne by the breached contract, these cases are simply an expression of the doctrine of avoidable consequences. However, if the indirect costs are of the type which cannot be reduced following the breach, and if the plaintiff could have entered into further contracts even though the defendant had not breached the contract, then the fact that the plaintiff did not enter into contracts after the defendant's breach does not lessen or eliminate the plaintiff's indirect costs. Had the defendant not breached the contract, the plaintiff would have had the defendant's full contract payment, in addition to the payments from the subsequent contracts, to pay his fixed indirect costs. Deducting indirect costs from the contract price to arrive at net profit results in giving the plaintiff one less contract from which these costs can be paid, and reduces his total net profit by the amount of the deduction. Several cases recognize this factor of undercompensation and do not deduct overhead in arriving at net profit. These are, however, statements of general principles, and individual cases must be analyzed carefully to determine whether they vary from assumptions on which these principles are based." 22 Am. Jur. 2d *Damages* §179, at 255-56 (1965).

With the foregoing principles of law in mind, we turn to an analysis of the facts of the instant case. The testimony of plaintiff's wife, Sharon Rivenbark, who was office manager-bookkeeper for plaintiff's business, established the total contract price at $218,632.59. Total credits amounted to $113,251.13, which represented the sum received from defendant for plaintiff's labor and supplies. The contract price of the work completed by the plaintiff, but for which plaintiff has not been paid was $31,210.24. The total cost for labor and materials for the portion of the project completed amounted to $90,491.30. Total overhead, which included the wages of two secretaries, postage, utilities, truck expense and depreciation, insurance, and office materials, equaled $5,639.98. Mrs. Rivenbark did not list as expenses on her books a charge for her own services of office manager, her husband's services as drywall craftsman and supervisor, or office rent since they used their home as their office. Net profits for the work completed equaled $48,330.09, which she computed by adding the total credits ($113,251.13) to the contract price of the work completed but not recompensed ($31,210.24) and then subtracting from this sum ($144,461.37) the cost of labor and materials ($90,491.30) and the cost of overhead ($5,639.98).

To determine lost net profits, Mrs. Rivenbark calculated the percentage

of profit on the work completed ($48,330.09 ÷ $144,461.37 x 100 = 33 + %) and projected that plaintiff's profit on the uncompleted portion of the contract would have been of an identical percentage if the work had been completed. Taking 33 + percent of the difference between the total contract price ($218,632.29) and the contract price of the work completed ($144,461.37), which equals $74,170.92, plaintiff's wife thus arrived at the figure of $22,385.17 for lost profits.

■■ We find this figure erroneous because plaintiff's witness employed an incorrect method of calculation of lost profits. Plaintiff presented no evidence of the projected cost of completion of the work. There was no testimony regarding anticipated direct costs (labor and material), indirect costs (overhead and other expenses) or how long it would have taken to complete the contract. Without such testimony the proper amount of lost net profit cannot be ascertained. It may be that plaintiff's cost of completion would have been greater than the contract price for the work remaining. In this instance, plaintiff would not be entitled to any lost profits. On the other hand, plaintiff's estimate may well approximate a fair amount of anticipated profits lost as a result of defendant's breach. Under these circumstances we conclude that the court erred in awarding lost profits in the manner calculated.

■■ Defendant's second contention is that he was prejudiced by plaintiff's failure to produce documents requested in defendant's notice to produce. Because of the necessity of reversal and remand on the issue of damages for lost profits for reasons hereinabove stated, we need not consider whether plaintiff's failure to produce the material requested in itself prejudiced the defendant's case. We note, however, that in the event of retrial of this case on the issue of damages for lost profits, defendant would be entitled to discovery of the material requested in his notice to produce. The documents requested appear to bear directly on the question of the proper amount of profits lost and should be available to defendant for the purposes of cross-examination.

■■ Next, defendant asserts that the court awarded an excessive amount of past due interest ($530) on a note plaintiff had with the Belleville National Savings Bank.

Where an award of damages is not supported by the facts in the record and the appellate court is convinced that it is excessive, the court may reverse outright or order a remittitur. (*Franzen v. Dunbar Builders Corp.*, 132 Ill. App. 2d 701; *Montgomery v. Harms*, 349 Ill. App. 245.) In the instant case the only evidence that defendant had agreed to pay a portion of the interest due on the note in question is an entry on the check of June 21, 1972. This check shows a $75 entry for "Interest on Loan" for which plaintiff has been paid. Plaintiff's testimony that defendant had agreed to pay all interest on the note in question was objected to and properly

stricken for lack of a proper foundation. Without proof of a writing, defendant's alleged oral promise to assume plaintiff's debt for interest on the note would be unenforceable because in contravention of the Statute of Frauds. (*Evans v. Owens*, 30 Ill. App. 114; *Laughlin v. Dalton*, 200 Ill. App. 342.) Consequently, we find the award of interest on the bank note in question not supported by the evidence.

■■ Finally, the defendant contends that the court awarded an excessive amount of damages for labor and material furnished pursuant to the contract. Specifically, defendant claims that plaintiff billed at least $2,500 for drywall materials for which plaintiff did not pay. Defendant argues that the result of the verdict is that it had to pay for $2,500 worth of drywall material twice, once to Gateway Drywall, Inc. (a party in the trial court), and once to plaintiff.

According to the testimony of Sharon Rivenbark, plaintiff did not include the amount complained of by defendant as a cost on the job in question. Her testimony indicates that the only amount included as a cost was the amount of Liese Lumber Company's inventory ($2,212.86) which amount defendant does not claim to be improperly included. That the trial court chose to accept Mrs. Rivenbark's figures instead of drawing a possible inference from a comparison of testimony of two of defendant's witnesses and two of plaintiff's exhibits was within its province as trier of fact. Thus, we find that the amount awarded to recompense plaintiff for labor and material, which represents the contract price of the work completed, was supported by the evidence.

The judgment of the Circuit Court of St. Clair County is affirmed insofar as it awards damages for work completed ($31,210.54). The award of damages for past due interest on a note of Belleville National Savings ($530) is reversed. The amount awarded as damages for anticipated profits ($22,385) is also reversed and the case remanded for a new trial on this issue only.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

JONES and G. J. MORAN, JJ., concur.