MIDLAND HOTEL CORPORATION, Plaintiff-Appellee, v. THE REUBEN H. DONNELLEY CORPORATION, Defendant-Appellant.

First District (2nd Division) No. 85—2752

Opinion filed September 23, 1986.

54

Byron L. Gregory and Steven H. Hoeft, both of Chicago (McDermott, Will & Emery, of counsel), for appellant.

Barbara B. Hirsch, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant, The Reuben H. Donnelley Corporation, appeals from a $500,000 verdict and judgment rendered against it in a breach of oral-contract action brought by plaintiff, Midland Hotel Corporation. The

award was based on plaintiff's asserted loss of profits caused by defendant's failure to include it under the "Hotels" listing of its 1981 *Visitors Guide.*

Defendant issued its first *Chicago Visitors Guide and Downtown Directory* in July 1981. The *Guide* was designed for tourists and business travelers and was divided into two sections, the first containing information regarding dining, shopping, entertainment, lodging, and points of interest, together with maps of the city, and the second, similar to the well-known "Yellow Pages," containing telephone listings of businesses in the downtown area from Roosevelt Road to Oak Street and as far west as Clinton Street. Defendant intended to earn money from the *Guide* through paid advertising, with ad rates directly proportional to the breadth of distribution. In its brochure to prospective advertisers, defendant described its distribution as 160,000 copies, with half of them going to hotels. Defendant distributed the *Guide* by (1) hiring its own distributors, (2) entering into contracts with downtown hotels for placement through their concierges and in-room replacement by maid services, and (3) providing copies to the Chicago Convention & Tourism Bureau.

Myron S. Levy, plaintiff's executive vice-president and general manager, testified that he met with a representative of defendant in early 1981 who told him that Midland would have the "appropriate listing" under the "appropriate" classifications in the *Guide*. However, when the 1981 *Visitors Guide* was released, plaintiff was not listed under the "Hotels" heading in the "Yellow Pages" portion of the *Guide*, although plaintiff was included under "Banquet Rooms." In the *Guides* to be distributed in its hotel, Midland did receive a back-page advertisement.

In the 1982 *Visitors Guide*, plaintiff did have a regular listing under "Hotels," two listings under the "Restaurant" heading, and a listing under "Banquet Rooms," which for an extra fee was printed in boldface. Plaintiff did not otherwise purchase advertising in the 1981, 1982 or 1983 *Guides.*

After discussions with defendant broke down, plaintiff filed suit to recover lost net profits caused by the alleged breach of contract. In its answer to plaintiff's complaint, defendant pleaded Midland's failure to mitigate damages as an affirmative defense. The trial court dismissed this defense at the close of the evidence. In response to a special interrogatory, the jury found that defendant had a contract with plaintiff entitling plaintiff to multiple listings in the 1981 *Guide*. The jury also found that defendant had breached this contract, and awarded damages of $500,000. The trial court entered judgment on

the verdict and denied defendant's motion for judgment *n.o.v.* This appeal followed.

Plaintiff has made a motion to strike the statement of facts in defendant's appellate brief, which this court ordered taken with the case. Supreme Court Rule 341 provides in relevant part:

"(e) Appellant's Brief. The appellant's brief shall contain the following parts in the order named:

\* \* \*

(6) Statement of Facts, which shall contain the facts necessary to an understanding of the case, *stated accurately and fairly without argument or comment,* and with appropriate reference to the pages of the record on appeal." (Emphasis added.) (103 Ill. 2d R. 341(e)(6).)

It is difficult to imagine a more argumentative statement of facts than the one that defendant has provided. After the first two sentences identifying the Midland Hotel, defendant states, without citation to the record, "During the period from July, 1979 to July, 1984, the Midland suffered sustained losses in its business." Defendant proceeds to discuss its theory of Midland's business troubles without mentioning the *Chicago Visitors Guide,* on which this suit is based, until page 7. Defendant devotes only 4 pages, of its 15-page statement of facts, to the testimony about the oral agreement on which this suit is based, an explanation of the 1981 *Visitors Guide,* and the jury verdict and post-trial motions. The rest of the statement of facts contains graphs and statistics calculated to show that Midland has been an unsuccessful business without regard to the existence of the *Visitors Guide.* Supreme Court Rule 341(e)(6) provides that the statement of facts "shall contain the facts necessary to an understanding of the case" (103 Ill. 2d 4. 341(e)(6)), but, far from promoting understanding, defendant's statement only generates confusion and taxes the patience of the court. It is clearly an attempt to prejudice this court against plaintiff's theory of damages, rather than present the facts "accurately and fairly without argument or comment" as required by the rule.

■ In the statement of facts, attorneys can properly present evidence that is favorable to their clients but not at the cost of this court's understanding of the case—in the hope that obfuscation, selection, and premature argument can persuade appellate judges to reach conclusions rejected by a trier of fact presented with all of the evidence. Zealous representation is encouraged, and vigorous argument should be applauded when located in the appropriate place where it can be supported by citation of authority (see 103 Ill. 2d R. 341(e)(7)),

but attorneys are also officers of the court and have an obligation to follow rules designed to assist this court in its task. When attorneys set out to win cases, not by argument designated as such, but by editorial comment, coloration, and querulousness in the statement of facts, it not only manifests disrespect for the intelligence of the court, but serves to obscure rather than enlighten and needlessly makes this court's job more difficult.

■ Having said this, it would appear to be anticlimactic to deny plaintiff's motion to strike, yet we hereby do so. The courts of this State have been reluctant to impose the sanction of striking portions a brief, even in cases of blatant violations. (See *Harper v. Kennedy* (1958), 15 Ill. 2d 46, 55, 153 N.E.2d 801, 806 (statement of facts replete with argument and conclusions); *People v. Madden* (1977), 52 Ill. App. 3d 951, 970, 368 N.E.2d 384, 399 (argumentative); *People v. Williams* (1967), 86 Ill. App. 2d 209, 214, 229 N.E.2d 158, 160-61 ("[T]he appellee's statement of facts is neither objective nor without comment. Rather he divests himself of his inventory of adjectives").) Of course, an improper practice cannot be excused simply because it is widespread, and at some point this court will be forced to impose sanctions to prevent Supreme Court Rule 341(e)(6) from becoming simply a "pretend-rule" or "purely ceremonial." (*Cf. People v. Townsend* (1985) 136 Ill. App. 3d 385, 418, 483 N.E. 340, 362 (Pincham, J., dissenting) (quoting *United States v. Antonelli Fireworks Co.* (2d Cir. 1946), 155 F.2d 631, 661-63, *cert. denied* (1946), 329 U.S. 742, 91 L. Ed. 2d 640, 67 S. Ct. 49).) However, we view the preceding chastisement and warning to be sufficient sanction at this time, and now proceed to consider the merits of this case.

■ At trial, defendant essentially conceded in its opening statement to the jury that it had a contract with each hotel that participated in its distribution program. Defendant first argues, however, that no contract breach was proved in this case because there was no "credible" evidence that it agreed to provide more than the single listing that plaintiff received. Defendant submitted the following special interrogatory, which was tendered to the jury:

> "Was there a contract between plaintiff and defendant which entitled plaintiff to more than one business heading in the Chicago Visitor's Guide?"

The jury answered "Yes." Nonetheless, defendant's brief seems geared towards getting this court to reevaluate the evidence and retry the case. Defendant makes only vague reference to a standard of review, stating six pages into its argument, "A verdict is entitled to deference"—but this is clearly a gross understatement, for it is horn-

book law that a special verdict can be overcome on appeal only where it is contrary to the manifest weight of the evidence, which requires that an opposite conclusion be clearly evident. (*Kristensen v. Gerhardt F. Meyne Co.* (1982), 104 Ill. App. 3d 1075, 1080, 433 N.E.2d 1050, 1053; *Linde v. Welch* (1981), 95 Ill. App. 3d 581, 583-84, 420 N.E.2d 490, 492-93.) Defendant has failed to show that the special verdict in this case should be overturned by this court under this standard.

Defendant contends, for example, that the jury was mistaken as to the terms of the contract, and notes that Earl Polisky, Donnelley's district sales manager, testified that he visited the Midland Hotel and spoke to Levy. Polisky further testified that Levy agreed to distribute the *Guides* in the Midland Hotel, and that in return:

"A. We gave the hotel a free, outside back cover ad for all the books that are distributed in the hotel.

Q. Is that all you offered?

A. Yes."

Roger Hughes, vice-president and general manager of defendant's midwest region, supported Polisky's testimony. On the other hand, Myron Levy, plaintiff's executive vice-president and general manager, testified in response to questioning by plaintiff's attorney that he met with a representative from Donnelley Corporation at the Midland Hotel before the *Guides* were published. Levy further testified:

"A. He asked us to distribute a new Chicago Visitors Guide in all of our rooms on a continuing basis. *In return, we would receive the appropriate listing, and we would receive an ad on the back cover.*

Q. The ad on the back cover, was that to be in all the Visitors Guides that Donnelley distributed everywhere?

A. No.

Q. How was that to be handled?

A. That was to be in all the books distributed in our hotel.

Q. And who was to pay for the preparation of the art work and such for that cover?

A. We were.

Q. And did you do that?

A. We did.

* * *

Q. What did [the representative] tell you about the listings in the listing sections?

A. *He said we would be in all the appropriate places.*

* * *

Q. What was the commitment you made?

A. I agreed that we would distribute his book for the terms he stated." (Emphasis added.)

Levy testified that he couldn't remember whether they had specifically discussed, classification by classification, the headings under which Midland would be listed, and that he had no other conversations with Donnelley personnel concerning the *Guides* before they were published. Levy added that he considered the concept to be very exciting because, with maps showing where to find activities in Chicago, it would be a very valuable piece for guests in his hotel.

■■ ▌ "Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact" (*Hodgman, Inc. v. Feld* (1983), 113 Ill. App. 3d 423, 428, 447 N.E.2d 450, 454; *Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 427, 431 N.E.2d 738, 742), and, as such, these determinations cannot be overturned unless contrary to the manifest weight of the evidence (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 400, 457 N.E.2d 66, 73). Ultimately, this case turns on whether one chooses to believe plaintiff's witness, Levy, concerning the terms of the contract, or defendant's witnesses.

Defendant argues:

"Throughout this issue runs the question of the reliability of Mr. Levy's recall of the meeting in February, 1982. He did not remember with whom he met. He did not know whether one listing or many listings were supposedly promised. He did not bother to discuss the number or placement of these listings. \*\*\* The Midland spend thousands and thousands of dollars annually on sales staff, advertising consultants, public relations consultants, radio advertising, and gala promotions. \*\*\* With all of this attention to advertising, *it is not believable* that Mr. Levy could have dealt so perfunctorily with an advertisement which purportedly was to account for more than 10% of the Midland's annual business." (Emphasis added.)

Defendant misapprehends the role of this court. Mr. Levy's recall and the other issues raised go only to the weight to be accorded to his testimony. The credibility of witnesses is for the jury to decide, not this court. See *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 253, 451 N.E.2d 1313, 1320; *Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 723, 334 N.E.2d 311, 313.

Richard Anderson, defendant's marketing project manager, testified that all downtown hotels, like every other area business, were to

receive a free listing regardless of whether they distributed the 1981 *Visitors Guide*, and that the Ritz-Carlton, Park Hyatt and Regency Hyatt were among those listed under "Hotels" although they did not provide in-room distribution. Defendant contends that this proves that it did not intend to offer the listings as part of the consideration for in-room distribution. While this contention is certainly plausible, it is not the only reasonable conclusion under the evidence presented. For example, the jury could have reasonably regarded the fact that defendant chose to list other downtown businesses without consideration as a collateral matter that had nothing to do with defendant's contract with plaintiff.

■ Defendant further argues that it would not have agreed to include plaintiff under "Hotels," at the risk of paying lost profits, simply in return for having the *Guides* distributed in the Midland. However, courts will not inquire into the adequacy of consideration to support a contract. (*Sta-Ru Corp. v. Mahin* (1976), 64 Ill. 2d 330, 338, 356 N.E.2d 67, 71.) Moreover, the "bargained for exchange" sufficient to support the contract in this case was at least, even as defendant admits, in-room distribution at the Midland in exchange for a back-cover ad. Defendant's representative offered to provide plaintiff with *Guides* that contained a listing for every downtown business as a *term* of the contract. What defendant in fact provided, however, were *Guides* that included every downtown business except one (as far as the record shows)—the Midland Hotel as a hotel! The situation would have been no different had defendant contracted to include plaintiff as part of an enterprise to distribute Cadillacs, but then supplied plaintiff with Volkswagens to distribute instead. Had defendant omitted a listing for a single downtown theatre it would have similarly breached the contract because theatres are downtown businesses; however, the value of plaintiff's injury in such a case (the lost expectancy that its guests would be able to use the *Guides* to find this theatre) would be so minuscule in relation to the object of the contract and the cost of replacing the defective *Guides*, that plaintiff would probably not be entitled to damages for such a breach. (*Cf. Jacob & Youngs v. Kent* (1921), 230 N.Y. 239, 129 N.E. 889 (damages for builder's breach in inadvertently failing to use pipe manufactured by the company specified in the contract, while using pipe of the same quality, cost, and appearance, were nominal or nothing).) However, plaintiff is suing for omission of its own listing in this case, and the damages to plaintiff from failure of that term are measurable and could be substantial. Under this analysis, the fact that defendant provided listings to other downtown hotels and businesses at no charge, and without regard to

whether they agreed to aid in the distribution, does not undercut plaintiff's case but, rather, supports it. Failure to perform any term of a contract, no matter how minor, is a breach of contract. (See 4 A. Corbin, Contracts sec. 936, at 809 (1951).) We cannot say that it is "clearly evident" that defendant had no oral contract to provide 1981 *Guides* in which the Midland was to receive more than one listing. As previously noted, the special verdict is not "contrary to the manifest weight of the evidence" (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 400, 457 N.E.2d 66,73; *Kristensen v. Gerhardt F. Meyne Co.* (1982), 104 Ill. App. 3d 1075, 1080, 433 N.E.2d 1050, 1053), and we therefore uphold the finding that defendant breached the contract.

Defendant, citing *Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 371 N.E.2d 3, next argues that a contract in which it agreed simply to provide plaintiff with "appropriate" listings is too vague and ambiguous to be enforced. We disagree. Whether a contract is ambiguous is a question of law for the court. (*Bell Fuels, Inc. v. Lockheed Electronics Co.* (1985), 130 Ill. App. 3d 940, 945, 474 N.E.2d 1312, 1316; *National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 200-01, 456 N.E.2d 206, 210-11.) The primary object in construing a contract is to give effect to the intention of the parties, and a contract is sufficiently definite and certain if the court is able, from its terms and provisions and allowable extrinsic evidence, to ascertain what the parties agreed to. (*First National Bank v. Minke* (1981), 99 Ill. App. 3d 10, 14, 425 N.E.2d 11, 14-15.) Plaintiff is known as the "Midland *Hotel,*" and defendant's offer was made in the hotel itself; Levy testified that a few days after the *Guide* was issued, the representative of defendant with whom he had originally negotiated acknowledged that failure to list the Midland under "Hotels" "was a mistake and he was sorry it happened"; and when asked whether a hotel should be listed under "Hotels," Donnelley's district sales manager testified, "You would think they should be there." Defendant argues that there are numerous other listings for the Midland that would also be appropriate, such as "Ballrooms," "Cocktail Lounges," "Coffee Shops," etc. However, plaintiff does not claim that it should have been listed under these headings as well, or that the listing under "Banquet Rooms" that it did receive was inappropriate. It is not necessary that a contract provide for every collateral matter and every future contingency to be sufficiently definite to be enforceable. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 130-31, 145 N.E.2d 644, 647-48.) We conclude that an offer to list the Midland Hotel in the "appropriate" places is not so

ambiguous as to render the contract unenforceable.

 ██ Defendant next argues that the court erred in failing to give its tendered instruction which states that lost profits will be allowed only if their loss was "reasonably within contemplation of the defaulting party at the time the contract was entered." Plaintiff's attorney was asked if she objected to the instruction, and she responded:

> "Yes. Contrary to the law in *Bigelow v. RKO Radio Pictures, Inc.* (1946) 327 U.S. 251, 90 L. Ed. 2d 652, 66 S. Ct. 574 and so many cases he also talks about, this I think is absolutely wrong and misleading for the jury. In the first place, the wrongful act of defendant caused the loss of profits and profits were reasonably within the contemplation of the defaulting party, that's not the law. I don't know what Donnelley would have been thinking of, nor do I care. It is at the time the contract was entered and it sounds like our damages are somehow limited in time and limited in amount to what Donnelley was thinking. We have a continuing damage claim."

The judge simply said, "I am going to refuse the instruction." Plaintiff now argues, without citation to authority:

> "It is black-letter law that damages for breach of contract are to compensate the party injured by the breach. The law is not as DONNELLEY claims, that a person who breaches a contract can exculpate himself by claiming that he never expected that his breach would have caused more damage than he is willing to pay."

Contrary to plaintiff's argument, contract damages are not like tort damages, and a breaching party is not liable for all of the injuries proximately resulting from its breach. (See 5 A. Corbin, Contracts sec. 1019, at 113 (1964); 11 S. Williston & W. Jaeger, Williston on Contracts, sec. 1344, at 226 (1968). *Cf.* also *Maere v. Churchill* (1983), 116 Ill. App. 3d 939, 943-44, 452 N.E.2d 694, 697 (damages for mental suffering not available for breach of contract to provide legal services in real estate transaction).) Rather, Illinois follows the common law rule, announced in *Hadley v. Baxendale* (1854), 9 Exch. 341, 156 Eng. Rep. 145, 5 E.R.C. 502, that lost profits will be allowed for breach of contract only when they were reasonably within the contemplation of the defaulting party when the contract was entered into. (See, *e.g., Printpack, Inc. v. Container Technologies, Inc.* (1984), 124 Ill. App. 3d 568, 575, 464 N.E.2d 298, 303; *F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.* (1982), 105 Ill. App. 3d 1135, 1141, 435 N.E.2d 724, 728; *Spangler v. Holthusen* (1978), 61

Ill. App. 3d 74, 80-84, 378 N.E.2d 304, 309-11; *Rivenbark v. Finnis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 539, 346 N.E.2d 494, 497; *Flug v. Craft Manufacturing Co.* (1954), 3 Ill. App. 2d 56, 63-67, 120 N.E.2d 666, 670-72.) This is in part so that a contracting party contemplating damages that flow from special circumstances can prepare itself for any additional risk by charging more, or getting insurance, or even deciding to forego the entire contract. See *Snell v. Cottingham* (1874), 72 Ill. 161, 169-70.

■■■ ■ Defendant contends that because no evidence was presented that lost profits were contemplated at the time of contracting, its motions for directed verdict or judgment *n.o.v.* should have been granted, and that this court should enter judgment in its favor on appeal. We disagree. The court should not direct a verdict on an issue unless no contrary verdict based on the evidence could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) In addition, it is a general rule that if there is any evidence to support the plaintiff's cause of action it is not proper for the appellate court to reverse a judgment of the trial court in his or her favor, without remanding the cause for further proceedings. (*Walden v. Chicago & Northwestern Ry. Co.* (1952), 411 Ill. 378, 390, 104 N.E.2d 240, 246.) In *Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 483 N.E.2d 1225, for example, vendors committed fraud in stating that the property would be paid for in 30 years and by failing to disclose a due-on-sale clause in a mortgage agreement that plaintiffs-purchasers had assumed. The supreme court held that damages were not established with sufficient certainty to be capable of being determined from the record, but vacated the award of damages and remanded for further evidence on that question rather than entering judgment for defendants.

■■■ In the present case, the damages were based on lost sales to potential hotel customers, and these sales were collateral to the transaction between plaintiff and defendant. (See *Rivenbark v. Finnis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 539, 346 N.E.2d 494, 497.) On the other hand, the contract was to list plaintiff in a guide, the primary function of which was to promote listed businesses and to carry advertising for defendant's profit. Since the very purpose of such an advertising vehicle is to encourage collateral transactions with the customers of advertised and listed businesses, and the evidence conflicted over the circumstances surrounding creation of the oral contract, we cannot say that a trier of fact could never reasonably find that defendant contemplated that it could be held liable for lost profits from the omission of Midland's listing, and that judgment in

this court, without remand, would be proper. Compare generally *Ashline v. Verble* (1977), 55 Ill. App. 3d 282, 285-86, 370 N.E.2d 613, 616-17; *Farwell Construction Co. v. Ticktin* (1976), 59 Ill. App. 3d 954, 961-63, 376 N.E.2d 621, 627-28; *Illinois Structural Steel Corp. v. Pathman Construction Co.* (1974), 23 Ill. App. 3d 1, 6, 318 N.E.2d 232, 235.

We need not further elaborate upon what is meant by "contemplation of the parties." However, our decision here should not be read as an endorsement of the particular wording in the instruction that defendant submitted on that issue—rather the precise contours of the "contemplation" standard will be better managed in the circuit court on remand, where both parties can fully consider and address the issue in light of modern authorities. See generally 5 A. Corbin, Contracts sec. 1010 (1964); D. Dobbs, Handbook on the Law of Remedies sec. 12.3, at 805, 813 (1973); 11 S. Williston & W. Jaeger, Williston on Contracts sec. 1344 (1968); R. Dunn, Recovery of Damages for Lost Profits (1981) (all noting a trend away from the more rigid standards of earlier common law holdings).

■ The question that remains is of the appropriate disposition of this case. This court has the power to limit the issues on remand (see 87 Ill. 2d R. 366(a)(5)), and can remand solely for the purpose of assessing damages (*Paul Harris Furniture Co. v. Morse* (1957), 10 Ill. 2d 28, 139 N.E.2d 275; *cf.* also Ill. Rev. Stat. 1985, ch. 110, par. 2—1206(b)).) A new trial solely on the issues of damages may be granted only where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of liability and damages are so distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the damages do not appear to be the result of a compromise on the question of liability. (*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 456, 394 N.E.2d 391, 393, *cert. denied* (1980), 444 U.S. 1018, 62 L. Ed. 2d 648, 100 S. Ct. 671; *Robbins v. Professional Construction Co.* (1978), 72 Ill. 2d 215, 224, 380 N.E.2d 786, 790; *Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 412 N.E.2d 1037.) This court has already concluded that the jury's finding of a breach of an oral contract to provide multiple listings was not against the manifest weight of the evidence. Defendant does not argue how the "manifest weight" standard differs from the requirement that the finding of liability be "amply supported" by the evidence when there is a limited remand. The jury's response to the special interrogatory makes clear that it had definite views that defendant was liable for breach of contract, and we perceive no unfairness in limiting retrial to the issue of

damages alone. The two questions are clearly distinct in this case, as evidenced by the fact that the jury was asked to specifically consider liability in a separate interrogatory, requested by defendant, in which it did not have to address the issue of damages. Finally, the third part of this test applies mainly to cases with low damage awards. Although less than plaintiffs requested, $500,000 is a significant award, and it is substantial enough for us to conclude that it was not a compromise to placate jurors reluctant to vote for liability. We conclude that this is an appropriate case for remand limited to the issue of damages.

It might be argued that contemplation of lost profits is an all-or-nothing proposition, and that any new trial in this case should be limited to the question whether plaintiff is entitled to damages at all, and that if the answer is affirmative, we should leave the amount of damages awarded intact. In *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 417 N.E.2d 154, for example, the trial court struck an assumption-of-risk defense in a strict-liability count in an action against a crane manufacturer, raising from a worker's injury. The jury awarded damages against the manufacturer, but this court reversed and remanded the cause for a new trial on strict liability alone, stating, "A new trial involving [the manufacturer] need not consider plaintiff's damages, since we believe that the amount awarded below was not affected by the jury's failure to pass on the issue of assumption of risk." 93 Ill. App. 3d 244, 259, 417 N.E.2d 154, 167. On the other hand, in *Student Transit Corp. v. Board of Education* (1979), 76 Ill. App. 3d 366, 395 N.E.2d 69, the plaintiff's bid to provide bus service for disabled pupils was accepted by a school, but was subsequently rescinded by the school board, and the contract awarded to the highest bidder. The appellate court affirmed the trial court's finding of liability for breach of contract, but it vacated the judgment and remanded for new findings on damages. The contract that was bid upon provided that the school board could cancel the contract in whole or in part after 60 days' written notice. The court stated:

> "We do not believe that the board could have contemplated damages for lost profits for more than a 60-day period because of the existence of the cancellation provision of the contract. The plaintiff, therefore, is entitled to damages only for lost profits for 60 days subsequent to the board's notification to the plaintiff of the termination of the contract." (76 Ill. App. 3d 366, 370, 395 N.E.2d 69, 71.)

In the present case, the jury awarded damages covering three years of lost profits from the 1981 *Visitors Guide*, on the assumption that some recipients of the *Guides* would keep them for several years

without replacing them. As Corbin points out, "it is not required that the facts actually known to the defendant are enough to enable him to foresee that his breach will cause a specific injury of a particular amount in money." (5 A. Corbin Contracts sec. 1012, at 88 (1964).) We are not prepared to say, as a matter of law, that defendant would or would not have contemplated that omission of a listing would result in three years of lost profits. The question is one for the jury in the first instance. (5 A. Corbin, Contracts sec. 1012, at 89 (1964).) Consequently, we vacate the entire award of damages and remand the cause for a new trial on the question of the proper amount of damages, as well as on the related question whether lost-profit damages were within the contemplation of the parties at the time of contracting. Defendant raises other issues concerning the sufficiency of plaintiff's proof of lost-profit damages, but we need not address these assignments of error because the entire question of damages is to be tried anew.

■■■ Finally, defendant argues that the court erred in directing a verdict on its affirmative defense that plaintiff failed to mitigate damages. However, in opposition to the directed-verdict motion at the close of the evidence, defendant's counsel simply stated, "They could have printed a book and put their name in it," and argued that plaintiff should have directly contacted business planners and travel agents. The evidence showed that plaintiff undertook an aggressive public relations, advertising, and sales campaign, although it is not clear whether plaintiff did any more advertising following the breach than it ordinarily would have done. As previously indicated, a court should not direct a verdict on an issue unless no contrary verdict based on that evidence could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) However, the precise form that mitigation would take in a situation such as this is not apparent, and the burden is on defendant, as the breaching party, to prove that plaintiff could have mitigated the damages. (See *Dillman v. Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 344, 442 N.E.2d 311, 316; *Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 100-101, 412 N.E.2d 1142, 1145.) Defendant offered no evidence that plaintiff could have done anything more to mitigate damages than it actually did, and the best that defendant can suggest on appeal is that plaintiff should have sent a mailing to all of those who received the 1981 *Guides*. While a plaintiff seeking damages for breach of contract should make reasonable efforts to mitigate damages, defendant proposes extraordinary efforts, beyond the requirements of this rule. (*Cf. Fruehauf Trailer*

*Co v. Lydick* (1945), 325 Ill. App. 28, 38-39, 51-52, 59 N.E.2d 551.) We conclude that the directed verdict on the failure to mitigate damages was proper in this case.

The judgment of the circuit court is affirmed as to the jury's finding that there was an oral contract to provide plaintiff with more than one business heading in the 1981 *Chicago Visitors Guide*, which was breached; the cause is remanded for further proceedings on the question whether loss-of-profit damages were within the contemplation of the defendant at the time of contracting and for a redetermination of the amount of damages.

Affirmed in part; reversed and remanded in part.

BILANDIC, P.J., and STAMOS, J., concur.